PHILIP ANDERSON[1] *vs.* CITY OF GLOUCESTER.

No. 08-P-577.

Essex. February 4, 2009. - October 15, 2009.

Present: McHUGH, MILLS, & GRAHAM, JJ.

*Practice, Civil,* Summary judgment. *Massachusetts Tort Claims Act. Negligence,* Municipality, Governmental immunity. *Governmental Immunity. Municipal Corporations,* Liability for tort, Police.

In a civil action alleging negligence in a police officer's misidentification of the plaintiff's wife as the deceased victim of a house fire, the judge erred in denying the defendant city's motion for summary judgment, in that G. L. c. 258, § 10(*j*), provided the city immunity from liability in circumstances where the uncertainty about the identity of the victims of the fire was a condition or situation that the city did not create and the officer's act, although unsuccessful, was designed to cure that condition or situation. [432-436]

CIVIL ACTION commenced in the Superior Court Department on December 20, 2006.

The case was heard by *Kathe M. Tuttman,* J., on a motion for summary judgment.

*John J. Davis* (*Michael D. Leedberg* with him) for the defendant.

*Paul L. Lees* for the plaintiff.

McHUGH, J. A mid-winter fire erupted in a house on Essex Avenue in Gloucester after an occupant threw a firecracker into a dry Christmas tree. The fire claimed the life of Ann Goyette, seriously injured Susan Anderson (Anderson), and inflicted lesser injuries on Clayton Enslow and Russell Currier. In the fire's immediate aftermath, however, Anderson was identified as the decedent. The error was discovered six days later upon removal of medical equipment that covered Anderson's face while she recuperated in a Boston hospital's intensive care unit.

[1]As parent and next friend of Brittney Anderson and Taylor Anderson.

Upon learning that Anderson had survived, her former husband, Philip Anderson, sued the city of Gloucester (city) on behalf of their two minor children, claiming that a Gloucester police officer negligently misidentified Anderson as the decedent and, as a consequence, caused emotional distress to the children.

After a period of discovery, the city moved for summary judgment, asserting that various provisions of the Massachusetts Tort Claims Act, G. L. c. 258 (MTCA), immunized it from liability. A Superior Court judge denied the city's motion. The city appeals and we reverse.[2]

*Background.* As usual in such cases, we view the facts in the light most favorable to the nonmoving party, here the plaintiff. See *New Habitat, Inc.* v. *Tax Collector of Cambridge,* 451 Mass. 729, 731 (2008). The plaintiff's claims stem from a fire at 163 Essex Avenue that broke out on December 22, 2003. At the time, Currier, Enslow, Goyette, and Anderson, the mother of the plaintiff's children, all lived in the house. The Commonwealth later claimed that the fire started when Currier threw a firecracker at a dry Christmas tree in one of the rooms, and Currier was indicted on various criminal charges.

The city's fire and police departments, including police Officer Kevin Mackey, responded to the fire. Mackey placed Currier and Enslow in his cruiser to keep them warm while the fire department attended to Goyette and Anderson, both of whom had been pulled, unconscious, soot-covered, and in extremis, from a smoke-filled bedroom. An ambulance transported the women to Addison Gilbert Hospital (hospital), where an emergency room doctor pronounced one of them dead. The other woman was airlifted by helicopter to Massachusetts General Hospital.

After the fire scene quieted, Officer Mackey discovered that Enslow, who had been cut while escaping from the burning house, had left some blood on the seat of his cruiser, so he went to the hospital to get some peroxide to clean the seat. Mackey arrived at the hospital before the airlift, and a nurse asked him to identify the surviving woman. Though he denies making any identification, the evidence in the record most favorable to the plaintiff

---

[2]The case is here under the doctrine of present execution. See *Fabre* v. *Walton,* 436 Mass. 517, 521 (2002).

indicates that Mackey identified the survivor as Goyette. In fact, she was Anderson.[3]

The hospital notified the plaintiff that Anderson had died. He informed his daughters of her death, but did not positively identify her body. Neither did the coroner's office, which conducted an autopsy, or the attending funeral home, which arranged for cremation of a body everyone believed was Anderson's. Six days later, however, medical equipment was removed from Anderson's face allowing Goyette's family to see for the first time that Anderson, not their daughter, had survived the fire.

The plaintiff sued the city and five other parties for negligent misidentification of Anderson.[4] In count two of his complaint, the only count asserting a claim against the city, the plaintiff asserted that Officer Mackey negligently misidentified Anderson. Specifically, the plaintiff alleged that Officer Mackey:

"(a) Failed to properly secure the identity of the two female victims sufficiently so that the next of kin of the decedent could be properly notified;

"(b) failed to coordinate with the employees of the Addison Gilbert Hospital to establish the identity of the two female fire victims;

[3]Mackey's deposition version of events is that while at the hospital, he learned from Enslow that the two women who had been rescued from the house were Goyette and Anderson and that he simply passed that information on to hospital authorities, attributing it to Enslow and making no effort to differentiate between the two women. An earlier statement he gave investigators has some similarities, although in his statement Mackey said that Enslow pointed out to him a room where doctors and nurses were engaged in vigorous activity and told him that Goyette was in that room. Later, when a nurse asked Mackey if he knew the women's identities, he said that he did not but relayed to her the information he had obtained from Enslow, attributing it to Enslow. The nurse who actually put a "Goyette" identification bracelet on Anderson before a helicopter took her to Boston stated unequivocally that Mackey identified Goyette as the surviving victim. Her account is corroborated by another emergency worker, who hinted that Mackey's identification rested on the victim's hair color. All witnesses generally agreed that there was some level of confusion that night regarding the identity of the female victims.

[4]The other defendants were the funeral home, the hospital, and the three medical personnel, two doctors and a nurse, who provided stabilizing emergency medical care to Anderson before she was airlifted to Boston.

"(c) provided a misidentification of the decedent to employees of the Addison Gilbert Hospital;

"(d) acted or failed to act in such other regards as will be revealed during . . . discovery."

In his presentment letter, see G. L. c. 258, § 4, the plaintiff stated that "a police officer relying on hair color to identify people involved in a significant house fire was unreliable and clearly negligent. . . . [T]he primary cause of the misidentification rests with the Gloucester Police Department investigating officers."

Acting pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), the city moved to dismiss count two, claiming immunity under the MTCA. A Superior Court judge treated the motion as a motion for summary judgment[5] and denied it, finding genuine issues of material fact "as to whether Mackey even made an identification" and "as to whether he was acting in his official capacity as a police officer." The city appeals, claiming immunity for discretionary functions under G. L. c. 258, § 10(*b*), immunity for acts arising out of police investigations under § 10(*h*), and immunity for failure to minimize the consequences of tortious conduct set in motion by others under § 10(*j*).

*Discussion.* We review the denial of a summary judgment motion de novo, *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007), to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). The city, as moving party, must affirmatively demonstrate "the absence of a genuine issue of material fact on every relevant issue, regardless of who would have the burden on that issue at trial." *Arcidi* v. *National Assn. of Govt. Employees, Inc.*, 447 Mass. 616, 619 (2006). Once it meets that burden, the plaintiff must show, with admissible evidence, a dispute as to a material fact. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711-712 (1991).

With those standards in mind, we turn to the applicable law.

---

[5]The city had included in its motion a copy of the presentment letter and a Superior Court decision in a related matter. See Mass.R.Civ.P. 12(b).

General Laws c. 258 contains a limited waiver of sovereign immunity.[6] Section 10(*h*) and (*j*) of c. 258 contain a "statutory public duty rule,"[7] *Carleton* v. *Framingham*, 418 Mass. 623, 627 (1994), which makes the waiver of immunity inapplicable to

> "(*h*) any claim based upon . . . a particular police protection service, or . . . *failure to* provide adequate police protection, prevent the commission of crimes, *investigate*, detect or solve crimes, identify or apprehend criminals or suspects, arrest or detain suspects, or enforce any law, but not including claims . . . as otherwise provided in clause (1) of subparagraph (*j*)"

and for

> "(*j*) any claim based on an *act or failure to act to prevent or diminish the harmful consequences of* a condition or situation, including the violent or *tortious conduct of a third person*, which is not originally caused by the public employer . . . . This exclusion shall not apply to: (1) any claim based upon explicit and specific assurances of safety or assistance . . . ." (Emphasis added.)[8]

Among other things, § 10(*h*) and (*j*) are based on a legisla-

---

[6]General Laws c. 258, § 2, inserted by St. 1978, c. 512, § 15, provides: "Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . . ."

[7]The public duty rule "began as a judicially created doctrine that protects governmental entities from liability under G. L. c. 258 unless a plaintiff can show that the duty breached was owed to the injured person himself, and not merely the public at large." *Chiao-Yun Ku* v. *Framingham*, 62 Mass. App. Ct. 271, 272 n.2 (2004). In *Jean W.* v. *Commonwealth*, 414 Mass. 496, 499 (1993), the Supreme Judicial Court announced its intent to abolish that rule because its "efforts to distinguish viable claims from those subject to dismissal by use of the public duty-special relationship dichotomy have not succeeded in producing a rule of predictable application." Before abolishing the rule, however, the court invited the Legislature to act. Responding to the invitation, the Legislature added G. L. c. 258, § 10(*h*) and (*j*), thereby creating "what in effect is a statutory public duty rule providing governmental immunity." *Carleton* v. *Framingham*, 418 Mass. 623, 627 (1994), citing St. 1993, c. 495, § 57.

[8]General Laws c. 258, § 10, begins by saying that the provisions of c. 258, §§ 1-8, "shall not apply" to, inter alia, § 10(*b*), 10(*h*), and 10(*j*). Although it

tive recognition that public employees who respond to emergencies are called upon to act swiftly, often without the time for investigation and deliberate reflection available in other circumstances. As a consequence, the opportunity for mistakes is high, and municipal exposure to liability for those mistakes creates both an undesirable disincentive to action and the possibility of enormous claims on the public purse.[9]

Viewed in that light, we think that § 10(*j*), which, as noted, provides immunity for "an act or failure to act to . . . diminish the harmful consequences of . . . the . . . tortious conduct of a third person, which is not originally caused by the public employer," see *Brum* v. *Dartmouth*, 428 Mass. 684, 692 (1999), immunizes the city from liability under the undisputed circumstances the record reveals, even if § 10(*b*) and (*h*) do not.[10] It is undisputed that the two women discovered in the

is common to think and speak of c. 258, § 10, as providing governmental agencies with immunity for certain conduct, that introduction drives home the point that the section is actually a catalog of acts or omissions with respect to which pre-existing governmental immunity has not been waived. The introduction also provides a context for a footnote in *Carleton* v. *Framingham*, seized upon by the plaintiff, in which the court said, "No party has argued to us that the amendment [adding § 10(*h*) and 10(*j*)] simply makes the Massachusetts Tort Claims Act inapplicable to claims described in the amendment, leaving this court free to apply common law principles to such claims, unfettered by statutory governmental immunity considerations. It appears reasonable to infer that the Legislature intended to immunize municipalities from liability for those claims described in the amendment." 418 Mass. at 628 n.6. The plaintiff argues that the footnote is an indication that the common law, wholly unconstrained by any provision of G. L. c. 258, applies to claims like those he has asserted. We do not believe that the footnote can be read in that fashion. Even if we were to accept the plaintiff's argument, however, he would receive no benefit, for the first applicable common-law principle in these circumstances is sovereign immunity, see, e.g., *Morash & Sons, Inc.* v. *Commonwealth*, 363 Mass. 612, 615 (1973), from which c. 258 provides limited but exclusive relief.

[9]In inviting the Legislature to act before it abolished the public duty rule, the Supreme Judicial Court noted that the rule was designed to protect "the Commonwealth and municipalities from excessive financial burdens." *Jean W.* v. *Commonwealth*, 414 Mass. at 510. By way of example, the court pointed out that a judicial decision holding that "municipal firefighters owe individual citizens a duty of careful firefighting, violation of which would result in municipal liability, . . . would have serious, and perhaps overwhelming ramifications for cities and towns . . . [and] the resulting potential liability would be staggering." *Ibid.*, quoting from *Cyran* v. *Ware*, 413 Mass. 452, 463 (1992) (O'Connor, J., concurring).

[10]Immunity for discretionary functions provided by § 10(*b*) is generally limited to discretion exercised at the level of policy formulation, an activity in

smoke-filled bedroom were covered with soot and that no one at the hospital knew who they were. It is undisputed that upon their arrival at the hospital, one of the women was dead and the other was in such grave condition that an immediate helicopter airlift to a Boston hospital was essential. And it is also undisputed that once the victim arrived in Boston, she was covered so thoroughly by the medical equipment necessary for her survival that even the parents of the decedent did not realize that Anderson, not their daughter, was in the hospital bed until the equipment was removed. All of those conditions, and the uncertainties they produced, were a direct result of the fire, not of action or inaction by city employees, Mackey or others. Clearly, those uncertainties were harmful, not only because of the emotional toll they took on friends and family but also because of the potentially adverse impact they could have had on provision of appropriate, patient-specific medical treatment to the survivor.

On this record, Mackey's identification of Goyette as the survivor was plainly an "act" intended to "diminish the [fire's] harmful consequences," namely the uncertainties about the identity of the victims. Because of the error, Mackey's act did not produce the desired result. But § 10(j) does not provide immunity for success. Indeed, no immunity is needed for acts that succeed, and § 10(j) provides the immunity the Legislature thought necessary for acts that fail. Mackey's act is, therefore, an act the statute covers.

The result we reach is not contrary to the Supreme Judicial Court's holding in *Kent* v. *Commonwealth*, 437 Mass. 312, 319

which Mackey surely was not engaged when he made the identification. See generally, e.g., *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 141 (1992); *Fortenbacher* v. *Commonwealth*, 72 Mass. App. Ct. 82, 87 (2008). But see *Sena* v. *Commonwealth*, 417 Mass. 250, 257 (1994) ("conduct of law enforcement officials in investigating potentially criminal conduct and in seeking warrants for the arrest of those whom they investigate, are discretionary functions and therefore fall within the exception in § 10[b]"); *LeBlanc* v. *Commonwealth, ante* 419, 423 (2009). Section 10(h) covers "any claim based upon . . . failure to . . . investigate . . . crimes." Determining the victim's identity is, of course, an essential part of criminal investigations. See, e.g., *Commonwealth* v. *Garabedian*, 399 Mass. 304, 308 (1987); *Commonwealth* v. *Worcester*, 44 Mass. App. Ct. 258, 262 (1998). It is conceivable, therefore, that § 10(h) is broad enough to immunize Mackey's activities at the hospital. Nevertheless, those activities do not fit easily into the statutory shelter either § 10(h) or § 10(b) creates.

(2002). There, although in a very different context, the court held that for a public employer's "affirmative act to be the 'original cause' of a 'condition or situation' that results in harmful consequences to another from the . . . 'tortious conduct of a third person,' . . . the act must have materially contributed to creating the specific 'condition or situation' that resulted in the harm." *Ibid.* The court gave as examples three situations in which governmental employees set in motion a chain of events that allowed violent people to harm others.[11] *Id.* at 319 n.9. In each of those cases, no condition or situation, tortious or other, was producing harmful consequences before the government acted and, without the government's action, no such condition or situation would have existed.

Here, by contrast, uncertainty about the identity of the victims was a condition or situation the city did not create and it was one that Mackey's act was designed to cure. General Laws c. 258, § 10($j$), therefore, is applicable and provides the city with immunity. Accordingly, the order denying the city's motion for summary judgment is reversed, and the case is remanded to the Superior Court for entry of judgment dismissing the plaintiff's claims against the city.

*So ordered.*

---

[11]The court's examples were these: "[T]he recommendation of a convicted rapist for employment in a trailer park that gave him access to keys of all of the units of potential victims in the park, *Bonnie W.* v. *Commonwealth*, 419 Mass. 122 (1994); the placement of an unstable mental patient in a rooming house that he subsequently set on fire, *Onofrio* v. *Department of Mental Health*, 408 Mass. 605 (1990), *S.C.*, 411 Mass. 657 (1992); and the hiring of a guidance counselor who subsequently abused his students, *Doe* v. *Blandford*, 402 Mass. 831 (1988)." *Kent* v. *Commonwealth*, 437 Mass. at 319 n.9.