## Nicola Gennari[1] *vs.* Reading Public Schools.

No. 09-P-644.

Middlesex. January 19, 2010. - September 22, 2010.

Present: Duffly, Rubin, & Milkey, JJ.

*Practice, Civil,* Summary judgment. *Governmental Immunity. Massachusetts Tort Claims Act. Negligence,* Public employee, School. *School and School Committee,* Liability for tort, School principal.

In a personal injury action brought against a public school district (defendant), alleging that the choice of recess location for a first-grade class, made by the principal of one of the defendant's schools, was negligent and was the proximate cause of the injury suffered by a student (plaintiff), the judge did not err in denying the defendant's motion for summary judgment, in which the defendant asserted that it was not the "original cause" of the plaintiff's injury and was thus entitled to immunity under the Massachusetts Tort Claims Act, G. L. c. 258, § 10(*j*), where, even though a schoolmate's conduct in pushing or falling into the plaintiff could be said to be the more immediate cause of the injury, the principal's decision to hold recess in a concrete courtyard, which contained dangers posed by low, concrete-topped brick walls, materially contributed to creating the specific condition or situation that resulted in the harm to the plaintiff [763-765]; further, the principal's decision, which did not rise to the level of policy making, was not a discretionary act entitled to immunity under G. L. c. 258, § 10(*b*) [765-767].

Civil action commenced in the Superior Court Department on March 7, 2006.

The case was heard by *Sandra L. Hamlin,* J., on a motion for summary judgment.

*Michael D. Leedberg* for the defendant.

*Geoffrey DuBosque* (*Aimée M. Goulding* with him) for the plaintiff.

Rubin, J. On November 1, 2004, plaintiff Nicola Gennari (Nico or plaintiff), then a first-grade student attending Wood

---

[1]A minor child, by his mother and next friend, Leslie Gennari. Although the plaintiff's name appears as "Nico" on the complaint, the record indicates that his first name is "Nicola" and that he is known as "Nico."

End Elementary School (Wood End) in Reading, was seriously and permanently injured during a school-mandated recess period. At the time of Nico's injury, Wood End lacked a playground. Principal Karen Callan, who had served as an elementary school principal for eleven years, directed that the first graders' recess be conducted in a concrete courtyard, although there were alternative locations where that recess might have been held, including the school gymnasium which was equipped with padded walls. The courtyard was not simply an empty area with a concrete surface. It was populated by several "bench-walls," essentially low, concrete-topped brick walls, each several feet long, that could be used as benches, and that had sharp edges and corners. The plaintiff filed this action against the defendant Reading Public Schools, alleging that Principal Callan's choice of recess location was negligent, and was the proximate cause of Nico's injury. The case is before us on an appeal from the denial of the defendant's motion for summary judgment, in which the defendant asserted statutory immunity under §§ 10(b) and 10(j) of the Massachusetts Tort Claims Act (MTCA), G. L. c. 258.[2] We review the denial of summary judgment de novo, viewing the evidence contained in the summary judgment record in the light most favorable to the nonmoving party, in this case the plaintiff, *Gray* v. *Giroux*, 49 Mass. App. Ct. 436, 438 (2000). We affirm the order denying the motion for summary judgment, but on reasoning that differs from that of the Superior Court judge.

The plaintiff brings his negligence claim under § 2 of the MTCA, which provides that "[p]ublic employers shall be liable for injury or loss of property . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . . ." G. L. c. 258, § 2, inserted by St. 1978, c. 512, § 15. However, § 10(j) of the MTCA precludes application of § 2 to:

"any claim based on an act or failure to act to prevent or

---

[2]The defendant brings this appeal under the doctrine of present execution, which allows for the immediate appeal of an interlocutory order denying an assertion of immunity from suit. See *Fabre* v. *Walton*, 436 Mass. 517, 521 (2002). See also *Brum* v. *Dartmouth*, 428 Mass. 684, 688 (1999).

diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."

G. L. c. 258, § 10(*j*), inserted by St. 1993, c. 495, § 57. The Supreme Judicial Court has "construed the 'original cause' language to mean an affirmative act (not a failure to act) by a public employer that creates the 'condition or situation' that results in harm inflicted by a third party." *Kent* v. *Commonwealth*, 437 Mass. 312, 318 (2002).

At his deposition, Nico testified that his injury occurred while he was racing with other children around the courtyard. He "felt a push" from behind, which caused him to fall, and his face struck the corner of a concrete bench-wall, resulting in a severe laceration. The push came from his fellow first grader and friend, six year old Samuel Turrecamo (Sam). In denying the defendant's motion for summary judgment, the judge concluded that whether the principal's directive was the "original cause" of Nico's injury turned on whether the push felt by Nico was intentional or accidental. Because this was a disputed issue of fact, the judge concluded that summary judgment should be denied. See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002).

In these circumstances, six year old Sam's intention is immaterial. Both the language of § 10(*j*) and the decisions of our courts make clear that at least in some circumstances, a public employer's affirmative act can serve as the "original cause" of a harmful condition or situation, and thus as a basis for liability, even when the harm is effected by "the violent or tortious conduct of a third person." See, e.g., *Bonnie W.* v. *Commonwealth*, 419 Mass. 122, 124-127 (1994) (holding that § 10(*j*) did not bar suit against parole officer for negligently recommending convicted rapist for position of employment at trailer park where he would have access to units of potential victims and, more than four months later, he attempted a sexual assault). The correct inquiry is whether the public employer's act "materially contributed to creating the specific 'condition or situation' that resulted in the harm." *Kent, supra* at 319. See *id.* at 319 n.9 (citing with approval, inter alia, *Bonnie W., supra*).

Principal Callan affirmatively ordered that the first graders' recess be held in the concrete courtyard. The causal link between that act and Nico's injury in this case is not so remote that as a matter of law we can say the principal's decision is not an "original cause" of the injury within the meaning of the statute. Cf. *id.* at 319 ("Acts that merely result in individuals living or traveling in society are too remote as a matter of law to be the original causes of specific conditions or situations that may arise years later as the result of their societal interactions"). Running, falling, and pushing are understood, foreseeable, even inherent parts of first-grade recess. Thus, even though Sam's conduct in pushing or falling into Nico can be said to be the more immediate cause of the injury, principal Callan's decision to hold recess in the concrete courtyard, which contained whatever danger the protruding bench-walls represented, materially contributed to the "condition or situation" that caused the harm.

The alternative conclusion — that regardless of a negligent decision to hold recess in an unsafe area, the school district is immune from suit if one first grader pushes another during recess, but is subject to suit if the first child simply falls or is pushed into the second — would divorce the law from any grounding in common sense. It would result in precisely the absurdity threatened in this case: lawyers solemnly deposing little Sam to see if he pushed little Nico, or if he fell or was pushed into him. The law does not compel such a nonsensical result. Because, in either case, the decision to hold recess in the courtyard was an "original cause" of the situation that led to the injury, the motion judge was correct in denying the defendant's assertion of immunity under § 10(*j*).[3]

The defendant's claim of immunity under § 10(*b*) fares no

---

[3] The defendant also appeals from the denial of its motion to strike an affidavit submitted with the plaintiff's opposition to the defendant's motion for summary judgment. In that affidavit, Nico asserts that during a "play date" more than three and one-half years after the fall and just weeks before the affidavit was signed, Sam told the then ten year old plaintiff that, on the day in question three years earlier, he tripped and fell into him. ("[Sam] said his shoelace came out of his shoe and he stepped on it and fell forward. He said that he put [h]is hands in front of him and he fell into me. He said he was sorry again.") Since the challenged affidavit has no bearing on our analysis, we need not reach this claim of error.

better. That section excepts from the MTCA's broad waiver of sovereign immunity "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." G. L. c. 258, § 10(*b*), inserted by St. 1978, c. 512, § 15. As the Supreme Judicial Court has explained, however, not every discretionary act is entitled to immunity. Section 10(*b*) immunity extends only to "discretionary conduct that involves policy making or planning." *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 141 (1992). "Decisions that require some discretion, but that do not involve social, political, or economic policy considerations are not immunized by § 10(*b*)." *Alake* v. *Boston*, 40 Mass. App. Ct. 610, 614 (1996).

Although "not a model of precision and predictability," *Stoller, supra* at 142 (internal quotation omitted), the relevant distinction is between policy making, on the one hand, and the discretionary *decisions that inhere* in effecting that policy, on the other. See *ibid.* See e.g., *id.* at 145-146 (no policy determination in firefighters' discretion to use sprinkler systems *in* addition to hoses); *Horta* v. *Sullivan*, 418 Mass. 615, 621 (1994) (no policy determination in police officer's decision to continue pursuit of suspect; it was "an ad hoc decision, based on the situation confronting him"); *Greenwood* v. *Easton*, 444 Mass. 467, 473 (2005) (no policy determination in school's installation of parking barriers, including the choice of whether and how to secure them).

The defendant casts Principal Callan's choice of recess location as a discretionary allocation of limited resources, and a policy preference for "fresh air" over the safety benefits of other available venues. But her decision did not rise to the level of policy making. Principal Callan was effectuating both a district-wide policy mandating recess and one charging her with, in the words of the description of her job issued by the defendant, "responsibility for the welfare and the safety of pupils."[4] In seeking to effectuate these policies she made an ad

---

[4]Indeed, she testified at her deposition that the children's safety was, appropriately, her "top concern."

hoc decision of where to hold the recess based on the situation confronting her. As with most discretionary decisions, she may well have had reasons for her decision, but that does not render it a policy-making choice. Such a decision is not entitled to immunity.

None of this, of course, is to say that principal Callan's decision was negligent. That has not been proven, and it is a question on which we express no opinion; it is one for the jury. The judge's order denying summary judgment was correctly decided.

*Order denying motion for summary judgment affirmed.*