NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-230                                          Appeals Court


ALEXANDRA STAHR & others[1] vs. LINCOLN SUDBURY REGIONAL HIGH
SCHOOL DISTRICT.


No. 17-P-230.

Middlesex.      November 9, 2017. - May 18, 2018.

Present: Agnes, Maldonado, & McDonough, JJ.


Practice, Civil, Motion to dismiss. Massachusetts Tort Claims
     Act. Governmental Immunity. School and School Committee,
     Athletic coach, Liability for tort. Negligence, School,
     Governmental immunity. Words, "Intervention."


     Civil action commenced in the Superior Court Department on
September 18, 2015.

     A motion to dismiss was heard by Kenneth J. Fishman, J.,
and a motion for reconsideration was considered by him.


     John N. Morrissey for the plaintiffs.
     Christine M. Dowling for the defendant.


     AGNES, J. The principle that "if there is tortious injury

there is liability" is one of long standing in Massachusetts

when the parties are private actors. Historically, however, the

_____

     [1] Jennifer Stahr, John Stahr, Stephen Stahr, and David
Stahr.

principle had no application when the negligent actors were employees of State or local government, because their employers were shielded from such lawsuits based upon the ancient doctrine of sovereign immunity. Morash & Sons v. Commonwealth, 363 Mass. 612, 618-619 (1973). With the adoption of the Massachusetts Tort Claims Act in 1978, G. L. c. 258 (act), inserted by St. 1978, c. 512, § 15, the Legislature abolished much of the governmental immunity doctrine subject to several exclusions. See G. L. c. 258, §§ 2, 10(a)-(j). Recently, in Cormier v. Lynn, 479 Mass. 35 (2018), the Supreme Judicial Court considered the applicability of a specific exclusion in the act that bars "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." G. L. c. 258, § 10(j), inserted by St. 1993, c. 495, § 57. In Cormier, the court, in keeping with prior case law, held that § 10(j) comes into play unless the public employer, by some affirmative act, "originally caused" the condition or situation that forms the basis for the plaintiff's negligence claim, 479 Mass. at 40, and determined that a grade school student who suffered a severe spinal injury as a result of being pushed down a stairwell at school by a classmate could not bring suit

against the city of Lynn and its school department, among others.  The court concluded that the claims were barred either because they "originat[ed] from a failure to act rather than an affirmative act," or because any affirmative actions by the defendants were "'too remote as a matter of law to be the original cause' of [the student's] injuries . . . and therefore cannot be said to have 'materially contributed' to creating the specific condition or situation resulting in [the] injuries." Id. at 41, citing Brum v. Dartmouth, 428 Mass. 684, 696 (1999), and Kent v. Commonwealth, 437 Mass. 312, 319 (2002).

In the case before us, we must determine whether § 10(j) is applicable to negligence claims brought by the plaintiffs against the defendant, Lincoln Sudbury Regional High School District (defendant).  The plaintiffs' claims arise out of an injury sustained by Alexandra Stahr, a member of the defendant's varsity field hockey team, who was struck by a field hockey stick wielded by another team member during a practice session. In addition, we also must consider whether a specific statutory exception to the immunity afforded by § 10(j) permits the plaintiffs' claims to proceed because they are grounded in "the intervention of a public employee which causes injury to the victim or places the victim in a worse position than [s]he was in before the intervention."  G. L. c. 258, § 10(j)(2).  For the reasons that follow, we conclude that notwithstanding the

serious injuries suffered by Alexandra,[2] the plaintiffs' claims are barred by § 10(j) and do not come within the saving provision of § 10(j)(2).

In their amended complaint, the plaintiffs allege that the defendant was negligent in (1) failing to properly train and supervise the athletic coaches and athletes present when Alexandra was injured; (2) failing to seek adequate medical assistance at the time of her injuries and, further, failing to provide adequate postinjury monitoring and planning related to Alexandra's injuries; and (3) failing to implement a written academic reentry plan following Alexandra's injuries. The plaintiffs also assert claims premised on negligent infliction of emotional distress and loss of consortium due to the acts and omissions of the defendant.

The defendant filed a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), on the basis that G. L. c. 258, § 10(j), barred the claims brought against the defendant, a regional school district. The motion judge dismissed the complaint in its entirety after finding that G. L. c. 258, § 10(j), insulated the defendant from liability. For the reasons set forth below, we affirm.

---

[2] Because the plaintiffs share a surname, we refer to Alexandra by her first name.

Background.  On September 30, 2012, Alexandra participated in field hockey practice as a member of the defendant's varsity field hockey team.  On that day, the team participated in a drill introduced and supervised by an alumna player acting as a volunteer coach (volunteer coach).  The head varsity field hockey coach (head coach) was also present on the field but did not actively participate in the supervision of the drill.  Prior to beginning the drill, neither coach gave the players any instructions or warnings as to techniques that could endanger other players.  The coaches also failed to prohibit the players from practicing dangerous techniques and did not inform the players that they would be penalized for utilizing such techniques.  During the drill, Alexandra was struck in the face by a teammate's field hockey stick after the teammate chose to pass the ball via a "hard-drive" as opposed to a "push-pass." The blow knocked out two of Alexandra's teeth and caused her to lose consciousness.

The volunteer coach did not provide Alexandra with assistance after she was injured.  The head coach left the field to find first aid supplies and did not immediately assist Alexandra or assess her injuries.  While the head coach was getting supplies, one of Alexandra's teammates called Alexandra's father.  Upon her return to the field, the head coach, who had retrieved one of Alexandra's teeth, put it on ice

and directed Alexandra to apply ice and gauze to her mouth.  The head coach did not take any steps to mitigate the effects of a possible concussion, and the defendant had not yet implemented a concussion protocol as required by G. L. c. 111, § 222, and 105 Code Mass. Regs. §§ 201.00 et seq. (2011).[3]  When Alexandra's father arrived at the field, the head coach did not explain to him the circumstances of Alexandra's injury or provide advice about how to treat her injury, including the proper protocol to follow in the event of a suspected concussion.  Alexandra's father took her for emergency dental surgery but failed to seek further emergency medical treatment.

Alexandra was subsequently diagnosed with a concussion on October 5, 2012.  The symptoms of her concussion caused her academic performance to suffer over a prolonged period of time. The defendant provided her with little academic assistance and did not implement a written graduated reentry plan,[4] which ultimately led Alexandra to withdraw from Lincoln-Sudbury Regional High School and transfer to another school.

---

[3] General Laws c. 111, § 222, establishes a regulatory framework relating to head injury safety and education.

[4] See 105 Code Mass. Regs. § 201.010(E) (2011) ("Each student who is removed from practice or competition and subsequently diagnosed with a concussion shall have a written graduated reentry plan for return to full academic and extracurricular athletic activities").

Discussion.  "We review the allowance of a motion to dismiss de novo . . . accept[ing] as true the allegations in the complaint and draw[ing] every reasonable inference in favor of the plaintiff."  Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011).

1.  General Laws c. 258, § 10(j).  In this case, we must once again wade into the "interpretive quagmire" that is G. L. c. 258, § 10(j).  See Brum, 428 Mass. at 692; Cormier, 479 Mass. at 40 n.10.  Section 10(j) confers significant protection from tort liability to public employers by barring "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."[5]  G. L. c. 258, § 10(j).  See Cormier, supra at 39-40.

a.  "Original cause" of Alexandra's injuries.  The plaintiffs first argue that the head coach's decision to allow an "untrained volunteer coach to introduce and supervise [a] novel close quarters drill" constituted an affirmative act that was the "original cause" of Alexandra's injuries.

---

[5] It is undisputed that the defendant is a public employer. See G. L. c. 258, § 1.

"To have 'originally caused' a condition or situation for the purposes of § 10(j), the public employer must have taken an affirmative action," and the employer's act "must have materially contributed to creating the specific 'condition or situation' that resulted in the harm." Cormier, 479 Mass. at 40, quoting from Brum, 428 Mass. at 695-696, and Kent, 437 Mass. at 319.

While the plaintiffs argue that the affirmative act of allowing an untrained volunteer coach to supervise a novel drill was the "original cause" of Alexandra's injuries,[6] their amended complaint makes clear that their claim is rather that the coaches' lack of supervision and inadequate instruction prior to allowing the players to engage in the drill -- both omissions -- caused Alexandra's injuries. The plaintiffs' claim in this respect amounts to an attempt to hold the defendant liable for failing to ensure Alexandra's safety during field hockey practice. As the Supreme Judicial Court stated in Cormier, 479 Mass. at 42, "Such a claim is precluded under the act." The plaintiffs' claim must fail, as it is premised on the defendant's failure to act. See id. at 41-42 (students

---

[6] Even if we consider this theory of liability, the act of allowing an untrained volunteer coach to direct and supervise the drill in which Alexandra was injured would not qualify as the "original cause" of the harm complained of because it is too attenuated from the events that were the direct cause of that harm. See Brum, 428 Mass. at 695; Jacome v. Commonwealth, 56 Mass. App. Ct. 486, 489 (2002).

instructed to line up before school without adequate supervision or guidance from defendant constituted failure to prevent harm in form of spinal injury to student who was pushed down stairwell, as opposed to affirmative act under § 10[j]).[7]

b. Aftermath of the injury. The plaintiffs next argue that § 10(j) does not bar so much of their claims as are based on the independent negligent acts of the defendant that occurred after Alexandra was initially injured.

i. Independent acts of negligence. Alexandra's injuries were caused by the negligent act of a third person -- here, her teammate -- and, as discussed supra, the defendant was not the "original cause" of Alexandra's injuries. The plaintiffs nevertheless maintain that the defendant is liable by arguing

---

[7] For the same reason that Gennari v. Reading Pub. Schs., 77 Mass. App. Ct. 762 (2010), was distinguishable in Cormier, 479 Mass. at 42 n.13, it is also distinguishable from the facts presented in the case before us. In Gennari, an elementary school principal directed first graders to participate in recess in a concrete courtyard containing numerous "bench-walls" with sharp edges. During recess, the plaintiff was pushed by a classmate and struck his face on the corner of one of the concrete bench-walls located in the courtyard. 77 Mass. App. Ct. at 763-764. The plaintiff subsequently filed suit against the school district. This court held that § 10(j) did not bar the plaintiff's claims against the school district on the basis that the principal's decision to hold recess in a concrete courtyard populated with bench-walls was an affirmative act constituting an "original cause" of the situation that led to the plaintiff's injury. Id. at 765. Here, as in Cormier, the original cause of Alexandra's injury was an omission -- the coaches' failure to properly instruct and supervise the athletes participating in the drill, and thereby ensure Alexandra's safety. See Cormier, supra at 42 n.13.

that the defendant's failure to implement and adhere to proper concussion protocols pursuant to G. L. c. 111, § 222, and 105 Code Mass. Regs. §§ 201.00 et seq., constituted independent acts of negligence that exacerbated the harm initially caused by Alexandra's teammate.[8]  However, § 10(j), by its plain language, precludes liability in such circumstances, as the exclusion is triggered by conduct amounting to a "failure to act to . . . diminish the harmful consequences of . . . the . . . tortious conduct of a third person, which is not originally caused by the public employer."  See Anderson v. Gloucester, 75 Mass. App. Ct. 429, 434-435 (2009) (holding that § 10[j] barred plaintiffs' negligent misidentification claim because police officer's misidentification of fire victim, while affirmative act intended to diminish ultimate harm suffered, was not original cause of harmful consequences suffered by plaintiffs, which stemmed from fire that city did not cause).

---

[8] General Laws c. 111, § 222(f), inserted by St. 2010, c. 166, § 1, provides:

> "Nothing in this section shall be construed to waive liability or immunity of a school district or its officers or employees.  This section shall not create any liability for a course of legal action against a school district, its officers or employees."

While the plaintiffs admit that the statute itself does not create a cause of action against the defendant, they argue that they may nonetheless bring a cause of action by showing that the defendant breached a duty owed to Alexandra by failing to comply with the statutory mandates of G. L. c. 111, § 222, and the applicable regulations.

ii.  Negligent intervention under § 10(j)(2).  The plaintiffs further argue that the motion judge erred in dismissing their amended complaint because the defendant's negligent intervention falls within the exception to § 10(j) immunity set forth in § 10(j)(2).  Section 10(j)(2) provides that § 10(j) immunity shall not apply to "any claim based upon the intervention of a public employee which causes injury to the victim or places the victim in a worse position than [s]he was in before the intervention."  The term "intervention" is not defined in G. L. c. 258, §§ 1 or 10.  When a statutory term is not specifically defined, we give it the "usual and accepted meaning, as long as [that] meaning[ is] consistent with the statutory purpose."  Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977).  See Commonwealth v. Gove, 366 Mass. 351, 354-355 (1974).  Typically, the usual and accepted meaning of a statutory term can be derived from a source such as a dictionary.  Zone Book, Inc., supra.  The term "intervention" is commonly understood to mean "the act or fact of intervening."  Webster's Third New International Dictionary 1183 (1993).  In this sense, "intervention" refers to an affirmative act on the part of the intervener.  This is how the term has been understood and applied in our appellate decisions.  Compare Jones v. Maloney, 74 Mass. App. Ct. 745, 750 (2009) ("The assistant principal's failure to take various actions, including

contacting the [plaintiff's] mother, . . . cannot be considered acts of intervention under § 10[j][2]"), with Serrell v. Franklin County, 47 Mass. App. Ct. 400, 405 (1999) (§ 10[j][2] exception applicable where affirmative act of pushing iron gate against plaintiff to subdue inmate exacerbated situation to plaintiff's detriment).

Here, the intervening "acts" alleged to fall within the scope of § 10(j)(2) are, rather, plainly omissions. These include the head coach's failure both to explain to Alexandra's father the circumstances of Alexandra's injury and to provide advice about how to treat her injury, and the defendant's failure to implement the proper concussion protocols under G. L. c. 111, § 222, and 105 Code Mass. Regs. §§ 201.00 et seq. Thus, the plaintiffs' arguments as to the applicability of § 10(j)(2)'s exception to the exclusion from liability set forth in § 10(j) must also fail. As we have noted on other occasions and in other contexts involving the scope of statutory remedies, the exception set forth in § 10(j)(2) reflects a policy judgment. "If it is unwise, it is not for us to say so; the remedy lies with the Legislature." Murphy v. Police Commr. of Boston, 369 Mass. 469, 471 (1976). See Commonwealth v. Vickey, 381 Mass. 762, 767 (1980) ("[W]hen the statute appears not to provide for an eventuality, there is no justification for judicial legislation").

2.  Other claims.  The plaintiffs' other claims, all of which stem from the injuries sustained by Alexandra during field hockey practice, also were properly dismissed by the motion judge.  See Jacome v. Commonwealth, 56 Mass. App. Ct. 486, 493 (2002).

Judgment affirmed.