NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-543

TESSA WOLFE & another[1]

vs.

JOHN BUDZYNA & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On appeal from an order of the Superior Court, the individual defendants claim error in the denial of their motion for summary judgment, which sought dismissal of the claims against them on the basis of immunity under G. L. c. 231, § 85W (the Charitable Immunity Statute).[3] We conclude that genuine disputes of material fact precluded entry of summary judgment and affirm.

---

[1] Austin Davy.

[2] James Solomon. The amended complaint also named Daniel Antonelli as a defendant, but the claims against him were dismissed with prejudice in the trial court and he is not part of this appeal.

[3] Because the Charitable Immunity Statute provides qualified immunity from suit and not simply from liability, "an order denying a motion to dismiss or a motion for summary judgment brought by a volunteer for a nonprofit organization based on the defense of charitable immunity is subject to interlocutory appeal as of right." Lynch v. Crawford, 483 Mass. 631, 640 (2019).

A party is entitled to summary judgment where the moving party "shows that, viewing the evidence in the light most favorable to the nonmoving party, 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Lynch v. Crawford, 483 Mass. 631, 641 (2019), quoting Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of the case at trial.  Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).  Our review of the denial of a motion for summary judgment is de novo.  See Gennari v. Reading Pub. Sch., 77 Mass. App. Ct. 762, 763 (2010).

The Massachusetts Wage Act, G. L. c. 149, § 148, imposes liability for unpaid wages on an employer, as well as on the employer's president and treasurer.  See Segal v. Genitrix, LLC, 478 Mass. 551, 558 (2017).  The Charitable Immunity Statute protects uncompensated officers of a nonprofit organization from liability for civil damages "as a result of any acts or omissions related solely to the performance of his duties as an officer."  G. L. c. 231, § 85W.  It does not, however, protect acts or omissions "intentionally designed to harm" or that are

2

"grossly negligent . . . which result in harm to the person."[4] Id.

In the present case, the undisputed facts in the record reveal the following. Boston Children's Theater, Inc. (BCT), a nonprofit organization, struggled financially for several years leading up to its declaration of bankruptcy, resulting in unpaid wages owed to the plaintiffs.[5] Defendants James Solomon and John Budzyna served as treasurers for BCT; Solomon also served as president. Neither was compensated for their service. The essential elements of a Wage Act claim and of a Charitable Immunity Statute defense are therefore met.

The parties differ on whether the individual defendants' actions could be construed to support an intent to harm the plaintiffs. Both defendants were aware that BCT employees were owed wages and yet continued to work. While Budzyna was serving as BCT treasurer, BCT's executive director regularly sent him a monthly list of vendors to be paid; Budzyna then used an electronic banking program to approve payments to those vendors.[6]

---

[4] The plaintiffs did not allege any grossly negligent actions by the defendants in their opposition to the defendants' motion for summary judgment, so we consider only whether the defendants acted with an intent to harm.

[5] BCT was named as a defendant in the plaintiffs' original complaint, but the claims against it were stayed after it filed a suggestion of bankruptcy. The plaintiffs later filed an amended complaint that did not name BCT as a defendant.

[6] BCT's former executive director is not a party to this suit.

For several months in which Budzyna approved payments to outside vendors, he was aware that BCT employees, including the plaintiffs, were still owed back wages. Budzyna also told BCT's unpaid employees, including at least one of the plaintiffs, that he and the board were "working on" addressing unpaid wages, and that he would do what he could to ensure that the wages were paid.

Like Budzyna, Solomon had control over BCT's expenses while serving as treasurer and interim president, and directed that funds be used to repay vendors and donors instead of employees. Solomon also told BCT employees, including the plaintiffs, that he was "working on" getting them paid.[7] Although Solomon informed the BCT board that BCT would not be able to make payroll, he did not inform the plaintiffs. Despite acknowledging that the plaintiffs continued to work without pay after bringing their payroll concerns to him, Solomon did not file an insurance claim to cover unpaid wages until November 2019, shortly before BCT filed for bankruptcy and after BCT had consistently struggled to make payroll for several months.

---

[7] Solomon told another BCT employee in an e-mail message to "have faith that while you do the excellent job I am told you do, I will be working with [the executive director] to make sure the money is there, not only for you to be paid on time, but for you to receive the back-pay that no one should have to wait for!"

4

Though Budzyna and Solomon claim that merely allowing or encouraging employees to continue working without pay does not show an intent to harm, the Supreme Judicial Court upheld denial of summary judgment on very similar facts in <u>Lynch</u> v. <u>Crawford</u>, 483 Mass. 631 (2019).[8]  In <u>Lynch</u>, former employees of a financially struggling nonprofit organization brought Wage Act claims against the former president.  483 Mass. at 632.  The president had personally promised employees that they would be paid, while he was aware that the organization would not make payroll and chose to direct funds to outside vendors instead of to employees.  <u>Id</u>. at 642.  The Court held that those actions constituted "an intentional design to harm employees by failing to pay them the wages they were due."  <u>Id</u>. at 644.

As in <u>Lynch</u>, in the present case both Budzyna and Solomon were aware that BCT would not timely make payroll, and that the funds necessary to do so would not be forthcoming, based on BCT's financial circumstances.  Cf. <u>Lynch</u>, 483 Mass. at 642.  Both Budzyna and Solomon personally assured employees that they would be paid.  Both Budzyna and Solomon directed funds be paid

---

[8] The defendants' contention that their expressed interest in, and efforts toward, seeing that the plaintiffs get paid all wages owed negates an "intent to harm," imports a malice standard that is not supported either by the language of the statute or by caselaw.  See <u>Lynch</u>, 483 Mass. at 644 (jury could find that defendant's actions in encouraging employees to work and assuring them payment was forthcoming showed intentional design to harm).

to vendors rather than to pay the plaintiffs' back wages.[9]  The evidence in the summary judgment record, viewed in the light most favorable to the plaintiffs and drawing all reasonable inferences in their favor, presents a triable question of fact whether the defendants, as treasurers and president of BCT, "acted with an intentional design to harm employees by failing to pay them the wages they were due."  Lynch, supra at 644.  Accordingly, we affirm the order denying the defendants' motion for summary judgment.

> So ordered.
>
> By the Court (Green, C.J.,
>   Rubin & Massing, JJ.[10]),
>
> *Joseph F. Stanton*
>
> Clerk

Entered:  April 11, 2023.

---

[9] We acknowledge that the defendants' decision to pay certain bills (such as for rent) was understandable, in that some payments were necessary to preserve the viability of the business as a whole, and that failure to preserve the business would result in a complete inability to pay wages to employees.

[10] The panelists are listed in order of seniority.

6