WALESKA JACOME[1] vs. COMMONWEALTH.

No. 00-P-1082.

Suffolk. March 20, 2002. - November 19, 2002.

Present: GREENBERG, LENK, & COWIN, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Commonwealth,* Claim against, Liability for tort, Duty to prevent harm. *Negligence,* Governmental immunity, Duty to prevent harm, Emotional distress. *Emotional Distress.*

This court concluded that immunity under the Massachusetts Tort Claims Act, G. L. c. 258, § 10(*j*), is not restricted to those claims arising from the violent or tortious behavior of third persons. [488-489]

In a civil action brought by the mother of a teenager who drowned at a beach owned and operated by the defendant Commonwealth, the plaintiff failed to demonstrate that her suit fell within an exception to the Commonwealth's immunity from suit under the Massachusetts Tort Claims Act, G. L. c. 258, § 10(*j*), where the Commonwealth did not create the conditions in the ocean waters that brought about the teenager's death. [489-490]

In a civil action brought by the mother of a teenager who drowned at a beach owned and operated by the defendant Commonwealth, the plaintiff failed to demonstrate that her suit fell within an exception to the Commonwealth's immunity from suit under the Massachusetts Tort Claims Act, G. L. c. 258, § 10(*j*)(3), for negligent maintenance of public property, where the Commonwealth did not "maintain" the ocean, nor was it expected to do so. [490-492]

A mother's civil action for emotional distress arising from the death of her son at a beach owned and operated by the defendant Commonwealth failed to state a claim upon which relief could be granted, where the Massachusetts Tort Claims Act, G. L. c. 258, § 10(*j*), barred the mother's claims based on the Commonwealth's alleged negligence toward her son, and where the allegation in the complaint that the Commonwealth's employees failed in their obligation to notify the mother when they recovered the son's body, and then aggravated that failure by keeping her waiting for more than thirty minutes the following morning before informing her that they had recovered the body, did not identify a legal duty that the Commonwealth breached; moreover, § 10(*j*) also barred the mother's emotional distress claim, which arose out of the circumstances directly related to the son's death, for which the Commonwealth had immunity. [492-493]

---

[1]Individually and as executrix of the estate of Wilson Ortiz.

CIVIL ACTION commenced in the Superior Court Department on August 3, 1999.

A motion to dismiss was heard by *Patrick J. King*, J.

*Matthew J. Tuttle* for the plaintiff.

*Stephen Dick*, Assistant Attorney General, for the Commonwealth.

COWIN, J. Following the death of her son, Wilson Ortiz, by drowning at Horseneck Beach, Westport, part of a State land reservation owned and operated by the Commonwealth, the plaintiff commenced this action alleging negligence, gross negligence, conscious pain and suffering, and negligent infliction of emotional distress. A judge of the Superior Court allowed the Commonwealth's motion to dismiss the complaint, Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), on the ground that the plaintiff's action was barred by the immunity provisions of § 10(*j*) of G. L. c. 258, the Massachusetts Tort Claims Act (Act).

The plaintiff appeals from the final judgment of dismissal, arguing that (1) G. L. c. 258, § 10(*j*), immunizes the Commonwealth only with respect to a failure to protect a plaintiff from the violent or tortious conduct of a third person; (2) Wilson Ortiz's death was brought about by a situation originally caused by public employees, and thus the claim survives under an exception to § 10(*j*) immunity; (3) his death was brought about by the negligent maintenance of public property, thereby exempting the claim from immunity, G. L. c. 258, § 10(*j*)(3); and (4) the plaintiff's claim for her own emotional distress should be permitted to go forward despite the immunity provisions of § 10(*j*) because of the public employees' conduct toward her following her son's disappearance but prior to her learning of his death. We conclude that the judge correctly applied the applicable provisions of G. L. c. 258, as interpreted in *Brum* v. *Dartmouth*, 428 Mass. 684, 691-696 (1999). The Commonwealth has not waived sovereign immunity in connection with a case of this kind. We affirm.

1. *Material facts.* Given that the case was decided on the basis of a motion to dismiss, we take the allegations of the complaint, together with such inferences as may be drawn favorably to the plaintiff therefrom, as true. *Eyal* v. *Helen Bdcst.*

*Corp.*, 411 Mass. 426, 429 (1991). A motion to dismiss shall not be allowed unless it is certain that the plaintiff is "not entitled to relief under any state of facts which could be proved in support of [her] claim." *Spinner* v. *Nutt*, 417 Mass. 549, 550 (1994). Thus, assuming the truth of the plaintiff's allegations, the material facts are as follows.

The Commonwealth controls and operates Horseneck Beach. On the afternoon in question, Wilson Ortiz, age sixteen, arrived at the beach with friends. At the time of their arrival, they observed that many people were on the beach, but no one was in the water. This apparently resulted from dangerous conditions that day which had in fact required rescues by lifeguards employed by the Commonwealth. A lifeguard told one of Wilson's friends that the conditions were such that the water would be off limits for about an hour. Wilson and his friends waited a short time, first spending some time on the beach, and then returning to their automobile.

Wilson and his friends soon returned to the beach and observed people in the water. This was prior to 6:00 P.M. No lifeguards were present, despite the fact that signs indicated that lifeguards would be on duty until 6:00 P.M. Wilson and certain of his companions entered the water; a riptide pulled him under the surface and he drowned. At the time of Wilson's death, the Commonwealth had neither closed the beach nor warned the public, by signs or otherwise, that conditions had been more dangerous than was normally the case.

After Wilson entered the water, one of his companions telephoned the plaintiff to tell her that Wilson had disappeared. The plaintiff rushed to the beach and observed officials conducting a search, presumably for Wilson's body. She remained at the beach until 10:00 P.M., at which time beach officials directed her to return home. Officials found Wilson's body during the early morning hours, but did not inform the plaintiff of this discovery at that time. When she returned to the beach the following morning, beach personnel kept her waiting for more than thirty minutes, and then told her that they had located Wilson's body.

2. *Failure to prevent harm.* The plaintiff's claims, as well as the Commonwealth's defense of immunity thereto, are governed

by the provisions of G. L. c. 258, § 10(*j*), as inserted by St. 1993, c. 495, § 57, which establishes that the Commonwealth shall, with certain exceptions, be immune with respect to "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." The plaintiff argues that this is not a general grant of immunity, but is instead a limited grant applicable only when public employees fail to protect a claimant from injuries inflicted by "the violent or tortious conduct of a third person." This contention ignores the structure of the clause that places the emphasis on immunity with respect to *any* claim for a loss not originally caused by the public employer. Furthermore, the plaintiff construes the word "including" with reference to the violent or tortious acts of third persons as being a word of limitation, whereas the word plainly introduces a phrase intended to provide only one example of an immunized claim. Thus, we hold that immunity under § 10(*j*) is not restricted to those claims arising from the violent or tortious behavior of third persons.

3. *Original cause of condition or situation.* The plaintiff next contends that it was the negligence of those in charge of the beach that brought about Wilson's death by drowning, and that therefore immunity under § 10(*j*) is unavailable because the "condition or situation" in question *was* "originally caused by the public employer or any other person acting on behalf of the public employer." The reference in § 10(*j*) to an "original cause" means "an affirmative act (not a failure to act) by a public employer that creates the 'condition or situation' that results in harm inflicted by a third party . . . ." *Kent* v. *Commonwealth*, 437 Mass. 312, 318 (2002). "[T]he principal purpose of § 10(*j*) is to preclude liability [on the part of the Commonwealth] for failures to prevent or diminish harm." *Brum* v. *Dartmouth*, 428 Mass. at 696. *Serrell* v. *Franklin County*, 47 Mass. App. Ct. 400, 403 (1999). For there to be liability despite the protection of § 10(*j*), the act of the government's agent "must have materially contributed to creating the specific 'condition or situation' that resulted in the harm." *Kent* v. *Commonwealth*, 437 Mass. at 319.

Here, even crediting all of the material allegations of the complaint, it was the conditions in the water that late afternoon that brought about Wilson's death. The Commonwealth did not create those conditions. Had the public employees acted differently, e.g., had the beach been closed, had conspicuous warning signs been posted, had lifeguards remained on duty until 6:00 P.M., it is possible that the tragedy might have been averted. But the very statement of these possibilities demonstrates why this claim is barred by § 10(*j*). They are all examples of ways in which the public employees might have *prevented* the harm to Wilson, and consequently they fall within the immunity from suit in such circumstances that the Legislature has preserved. They appear to us to be analytically the same as the failures of the school officials in *Brum* to prevent the killing of the student for whom they were responsible.

The plaintiff relies on *Bonnie W.* v. *Commonwealth*, 419 Mass. 122, 125, 126-127 (1994), for the proposition that the Commonwealth is liable when its agent takes action that exposes a claimant to risk. That is true, but the argument ignores the different facts of that case and attempts to apply its holding without reference to the principle embodied in § 10(*j*). In *Bonnie W.*, where the plaintiff was assaulted by a probationer employed as a result of a negligent recommendation by a parole officer, § 10(*j*) barred the plaintiff's claim for the probation officer's negligent supervision, which the Supreme Judicial Court later characterized "only as failure to prevent the assailant from being in a position to attack the plaintiff." *Brum* v. *Dartmouth, supra* at 695. Section 10(*j*) did not bar a claim arising out of the officer's negligent recommendation because that recommendation "was an affirmative act on the part of the officer that created a situation in which a sexual predator held a job giving him access to the keys to every trailer in the park." *Ibid*. It is within the holding of *Brum*, not the holding in *Bonnie W.*, that the present case falls.[2]

4. *Negligent maintenance of public property*. In the alterna-

---

[2]In her brief, the plaintiff argues that the statements and actions of the Commonwealth's employees were such that Wilson reasonably relied on them in believing that it was safe to enter the water. However, the plaintiff never alleged this in her complaint. The complaint states only that Wilson and his

tive, the plaintiff turns to an exception to the immunity from suit otherwise created by G. L. c. 258, § 10(j), specifically the provision that immunity shall not apply to "any claim based on negligent maintenance of public property." G. L. c. 258, § 10(j)(3). The essence of the plaintiff's argument appears to be that the Commonwealth's obligation properly to maintain its property creates a duty on the part of the Commonwealth to warn those who may be affected by dangerous conditions that the Commonwealth has been unable or unwilling to alleviate.

Apart from the exceptions to liability enumerated in § 10 of the Act, the Commonwealth is liable for injury to persons on its land in the same manner as is any private property owner. See *Dinsky* v. *Framingham*, 386 Mass. 801, 804 (1982). A landowner is obligated to maintain its premises in a reasonably safe condition. If it does not do so, it must at least warn a visitor of dangers of which the landowner is aware or should be aware. *Oliveri* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 165, 167 (1973).[3] These obligations are correlative; the duty to warn normally is an alternative to the duty to repair. *Camerlin* v. *Marshall*, 411 Mass. 394, 399 (1991).

The Commonwealth presses the contention that the judgment on this claim below can be affirmed on the basis of how the plaintiff pleaded the case, given that she alleged a failure to warn but did not allege negligent maintenance, and thus did not bring her claim within the ambit of G. L. c. 258, § 10(j)(3). We do not decide the case on this ground. We will construe the allegation of a failure to fulfil a duty to warn, at least for purposes of this proceeding, as implicitly incorporating an allegation that the Commonwealth had a duty to maintain property and that, having failed or refused to do so, a duty to warn the visitor of nonobvious dangers arising from the unmaintained conditions came into being.

However, even treating the plaintiff's pleading in this fashion, the complaint does not state a cause of action under § 10(j)(3)

---

companions "returned to the beach and noticed people in the water, swimming in the designated swimming area."

[3]The landowner has no duty to warn where the danger would be obvious to persons of average intelligence. *O'Sullivan* v. *Shaw*, 431 Mass. 201, 204 (2000). *Barnett* v. *Lynn*, 433 Mass. 662, 666 (2001).

because the plaintiff's claim is not "based on negligent maintenance of public property." The Commonwealth does not "maintain" the ocean. Given that it does not purport to keep the water in any state of repair, nor is it expected to do so, no "negligent maintenance of public property" is present. The complaint asserts that Wilson's death was attributable to conditions in the water, and, on that basis, neither a failure to maintain nor a breach of a correlative duty to warn can be said to have been the cause of the loss.[4]

5. *Emotional distress.* The plaintiff asserts that she suffered emotional distress negligently inflicted by the Commonwealth's employees, and that such distress occurred both as a result of the Commonwealth's negligence toward her son and as a result of the Commonwealth's negligence toward her. With respect to the former claim, § 10(*j*) bars the claim for the reasons set forth in sections 2 and 3 above. In addition, it is doubtful that the complaint states a cause of action in this regard given the absence of allegations that the plaintiff sustained "physical harm manifested by objective symptomatology," see *Payton* v. *Abbott Labs*, 386 Mass. 540, 557 (1982), as a result of severe mental distress arising from witnessing the negligently caused harm to the child or from arriving on the scene while the child was still there. See *Dziokonski* v. *Babineau*, 375 Mass. 555, 568 (1978); *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 517-518 (1980).

With respect to the claim that the Commonwealth negligently inflicted emotional distress on the plaintiff directly, the complaint alleges that, upon hearing of Wilson's disappearance, the plaintiff rushed to the beach. She observed that officials were conducting a search. With members of her family, she stayed at the beach until 10:00 P.M., at which time beach officials directed her to return to her home. By that time, officials had not recovered Wilson's body. They found the body during the night, but did not notify the plaintiff. The plaintiff returned

---

[4]Our disposition of this claim makes it unnecessary to consider either (a) the possibility that the Commonwealth's agents in fact gave Wilson an adequate warning that Wilson disregarded or (b) the question whether dangers inherent in ocean swimming are sufficiently obvious that no duty to warn was present under the principle set forth in *O'Sullivan* v. *Shaw*, 431 Mass. at 204.

to the beach in the morning, at which time beach personnel kept her waiting more than thirty minutes, and then told her that they had located Wilson's body.

At the outset, we have difficulty in accepting that these allegations state a claim of negligence under any circumstances. While conducting the search, the public employees did nothing that the complaint calls into question. It was only when they found the body that, according to the plaintiff, those employees failed in their obligation to notify her, then aggravated the failure by keeping her waiting for more than thirty minutes the following morning before informing her that they had recovered Wilson's body. Even if the Commonwealth's employees did not display the sensitivity that might be thought desirable in such circumstances, we are hard pressed to identify what legal duty it is that the Commonwealth is alleged to have breached. Furthermore, we do not see how the plaintiff at trial could conceivably demonstrate that, apart from her obvious emotional distress brought about by the loss of her son, she experienced *additional* emotional distress attributable not to Wilson's death, but rather to the Commonwealth's employees' delay in informing her that they had located the body.

Nevertheless, we do not rely exclusively on those considerations, because we conclude that the motion judge correctly held that § 10(*j*) also barred the plaintiff's emotional distress claim. The plaintiff's claim arises out of circumstances directly related to Wilson's death. As we have set forth above, the Commonwealth did not originally cause the condition or situation which brought about the harm, and thus was immune from suit for the loss. Hence, claims arising from circumstances intimately related to that condition or situation, and the resulting harm, are also barred. The alternative would be to permit imaginative pleading and the fractionalizing of claims that would undo the immunity that § 10(*j*) preserves. Here, the alleged infliction of emotional distress, while arguably caused by the public employees, arises so directly out of the circumstances for which the Commonwealth has immunity that that claim is barred as well.

*Judgment affirmed.*