## Carol Moore[1] *vs.* Town of Billerica.

No. 12-P-1294.

Middlesex. March 1, 2013. - June 7, 2013.

Present: Grasso, Trainor, & Carhart, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Municipal Corporations,* Governmental immunity. *Negligence,* Governmental immunity.

In a civil action arising from injuries incurred at a municipal playground, the judge erred in denying the defendant town's motion for summary judgment, where, despite the town's failure to undertake actions that could have prevented the injuries, the town was immune from suit under G. L. c. 258, § 10(*j*), in that the injuries in question were not caused by negligent maintenance of the playground on the part of the town [731-734]; and where the town was immune from liability under the recreational use statute, in that it did not engage in wilful, wanton, or reckless conduct within the meaning of G. L. c. 21, § 17C(*a*) [734-736].

Civil action commenced in the Superior Court Department on July 14, 2009.

The case was heard by *Garry V. Inge*, J., on a motion for summary judgment.

*John J. Cloherty, III*, for the defendant.

*Sean T. Goguen* (*George N. Panas* with him) for the plaintiff.

Trainor, J. The defendant, the town of Billerica (town), appeals from the denial of its motion for summary judgment on this suit brought under the Massachusetts Tort Claims Act (MTCA). In its motion for summary judgment, the defendant argued that it is immune from suit under G. L. c. 258, § 10(*b*) and (*j*), as appearing in St. 1978, c. 512, § 15, and immune from liability under the recreational use statute, G. L. c. 21, § 17C(*a*), as appearing in St. 1998, c. 268.[2] The judge denied

---

[1]As the mother and next friend of Shannon Moore.

[2]Although this appeal is interlocutory, the MTCA issues are properly before

the motion, citing "[g]enuine issues of material fact as to, inter alia, causation and . . . degree of discretion, if any, on the part of those in charge of maintaining the public property in question." For the reasons that follow, we reverse the order.

*Background.* We begin with a summary of the undisputed facts. The Kids Konnection playground in the town abuts the outfield fence of a little league baseball field. The playground is protected from flying baseballs by a high net supported by telephone poles. The net did not extend far enough toward right field to protect an area of the playground that contained a stage and picnic tables.[3] Both the playground and the baseball field were town property and were open to the public for use free of charge.

On August 23, 2007, Carol Moore (Carol) brought her four year old daughter Shannon to the Kids Konnection playground.[4] There, Carol met her friends Vickie Stagliola and Angela Sargent, who brought their children to the playground as well. At the same time, several teenage boys were playing "home run derby" on the baseball field. The goal of the game was to hit baseballs over the fence, and Stagliola had seen a baseball hit the netting earlier that day.

Shannon and a playmate went to the unprotected stage area to pick flowers. One of the boys hit a home run toward the stage area. After the ball cleared the fence, he heard a loud noise and then a little girl crying.[5] He rushed to the area to see what had happened. An unidentified parent informed Carol that a little girl was crying and had been hit by a baseball. The ball

---

us under the doctrine of present execution. See *Brum* v. *Dartmouth*, 428 Mass. 684, 687-688 (1999); *Kent* v. *Commonwealth*, 437 Mass. 312, 316 (2002). The doctrine does not apply to the recreational use statute. See *Marcus* v. *Newton*, 462 Mass. 148, 152-153 (2012). Nevertheless, we exercise our discretion to consider the recreational use issue, even though the town lacks the right to appeal it at this stage, because the matter is fully briefed and the issue is one of public importance. See *Boxford* v. *Massachusetts Hy. Dept.*, 458 Mass. 596, 601 n.13 (2010).

[3]The parties dispute whether the stage area was actually part of the playground. Because all facts are to be construed in favor of the nonmoving party, we will assume that the stage area was part of the playground.

[4]We use first names to avoid confusion.

[5]The boy who hit the ball had not seen anyone in the stage area before he hit the ball.

had struck Shannon in the head, and she suffered serious injuries as a result.

Carol, as Shannon's mother and next friend, sued the town. The town claimed immunity and moved for summary judgment. The judge denied the motion, and the town appeals.

*Discussion.* "We review the denial of a summary judgment motion de novo, to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.' " *Anderson* v. *Gloucester*, 75 Mass. App. Ct. 429, 432 (2009), quoting from *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991) (citation omitted).

1. *Immunity under § 10(j).* The town claims that it is immune from suit under G. L. c. 258, § 10(j), because Carol's claim is nothing more than an allegation that the town failed to prevent harm to her daughter. Carol counters that the town should not be immunized because this claim falls within the enumerated exception of negligent maintenance of public property. See G. L. c. 258, § 10(j)(3).

Section 10(j) provides that the limited waiver of sovereign immunity under the MTCA shall not apply to

> "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."

The principal purpose of this provision is "to exclude liability for 'an act or failure to act to prevent or diminish' certain 'harmful consequences.' " *Brum* v. *Dartmouth*, 428 Mass. 684, 692 (1999), quoting from § 10(j). "Thus, there is immunity in respect to all consequences except where 'the condition or situation' was 'originally caused by the public employer.' " *Ibid.* "[I]mmunity under § 10(j) is not restricted to those claims arising from the violent or tortious behavior of third persons." *Jacome* v. *Commonwealth*, 56 Mass. App. Ct. 486, 489 (2002).

The *Brum* and *Jacome* cases are instructive. In *Brum*, a high

school principal was aware that a group of individuals might come to the school to attack a particular student, but neither the principal nor any other school officials took any precautions. *Brum, supra* at 686-687. When the assailants came to the school, they proceeded unimpeded to a second-floor classroom and stabbed the student to death. *Id.* at 687. Nevertheless, the Supreme Judicial Court held that the town was immune under § 10(*j*) for its failure to prevent the killing. *Id.* at 696.

This court reached a similar conclusion in *Jacome*. There, a group of teenagers went to the beach to swim, but the lifeguards stopped them because water conditions were unsafe. *Jacome, supra* at 488. The group returned when the lifeguards were gone (but at a time when the lifeguards were still supposed to be on duty) and went in the water. *Ibid.* A riptide pulled one of the group (Wilson) under, and he drowned. *Ibid.* We held that the Commonwealth could not be liable because it was immune under § 10(*j*):

> "Had the public employees acted differently, e.g., had the beach been closed, had conspicuous warning signs been posted, had lifeguards remained on duty until 6:00 P.M., it is possible that the tragedy might have been averted. But the very statement of these possibilities demonstrates why this claim is barred by § 10(*j*). They are all examples of ways in which the public employees might have *prevented* the harm to Wilson, and consequently they fall within the immunity from suit in such circumstances that the Legislature has preserved" (emphasis in original).

*Id.* at 490.

The situation here is the same as those in *Brum* or *Jacome*. Certainly, the town could have prevented the injury to Shannon. It could have extended the netting, posted warning signs, or erected fencing to prevent young children from wandering into the stage area. Those, however, are just "examples of the ways in which the public employees might have prevented the harm." *Ibid.* There is potentially an infinite list of possible preventive actions that public employees could have taken in any situation. It is almost impossible to imagine an injury that could not have been prevented, so the failure to undertake such actions cannot be the basis of defeating the town's immunity under § 10(*j*).

Carol argues, however, that the town is not entitled to § 10(*j*) immunity because the town's actions in this case fall within the enumerated exception for "negligent maintenance of public property." See G. L. c. 258, § 10(*j*)(3).[6] Carol contends that "maintenance" within the statute includes the act of keeping an area in safe condition. According to Carol, the failure to protect small children from the risk of errant baseballs, either by failing to post warning signs or erecting a barrier, constitutes negligent maintenance. We disagree.

The statute does not define "maintenance" or "maintain," so we look to "its generally accepted plain meaning." *Allen* v. *Boston Redev. Authy.*, 450 Mass. 242, 256 (2007). "Maintain" is defined as "to keep in an existing state (as of repair, efficiency, or validity): preserve from failure or decline." Merriam Webster's Collegiate Dictionary 749 (11th ed. 2005). The plain definition assumes that what is to be maintained has already been constructed. The few cases that have addressed § 10(*j*)(3) seem to adopt that assumption. See *Greenwood* v. *Easton*, 444 Mass. 467, 474-475 (2005) (by placing telephone poles as parking lot barriers, the town had a duty to maintain them in a safe condition and that duty included properly anchoring them); *Twomey* v. *Commonwealth*, 444 Mass. 58, 64 (2005) (§ 10[*j*][3]'s maintenance exemption bolstered the court's conclusion that the statute requiring the Commonwealth to "erect and maintain" traffic signs, G. L. c. 85, § 2, encompassed a duty to ensure that the stop sign was visible to motorists); *Rodriguez* v. *Cambridge Hous. Authy.*, 59 Mass. App. Ct. 127, 136-137 (2003), *S.C.*, 443 Mass. 697 (2005) (where residents were prohibited from changing the locks, the authority's maintenance obligation included changing the locks after receiving notice of a lost key). The maintenance of a playground envisions the general upkeep of the playground's equipment and grounds, not preventing all risks of danger to its visitors. Stretching the definition of "maintenance of public property" to require the town to extend the netting, erect a barrier, or post warning signs would effectively swallow the immunities provided by § 10(*j*), rendering

---

[6]The exception provides that § 10(*j*) immunity shall not apply to "any claim based on negligent maintenance of public property." G. L. c. 258, § 10(*j*)(3).

them entirely barren and ineffective.[7] See *Neff* v. *Commissioner of the Dept. of Industrial Accidents*, 421 Mass. 70, 75-76 (1995). Accordingly, we do not believe that § 10(*j*)(3) applies to the facts of this case.

The injuries to Shannon were not caused by the town's negligent maintenance of the playground. This case is therefore controlled by the reasoning set forth in *Brum* and *Jacome*, and because the theories advanced by Carol were based on the town's failure to prevent or diminish the injuries, the town must be held immune from suit under § 10(*j*).[8]

2. *Recreational use statute.* Because it is undisputed that Carol, Shannon, and the teenage boys were engaged in recreation and were not charged a fee for use of the town-owned baseball field and playground, the town is also immune from liability if it did not engage in "wilful, wanton, or reckless conduct."[9] G. L. c. 21, § 17C. See *Ali* v. *Boston*, 441 Mass. 233, 238-239 (2004); *Dunn* v. *Boston*, 75 Mass. App. Ct. 556, 562 (2009). We conclude that, as a matter of law, the town's actions (or inactions) regarding the playground were not wilful, wanton, or reckless. Therefore, the town enjoys immunity from liability under the recreational use statute.

---

[7]Before the enactment of § 10(*j*), the cases interpreting G. L. c. 258, § 10(*b*), distinguished between building a fence and maintaining an already-erected fence. See *Tryon* v. *Lowell*, 29 Mass. App. Ct. 720, 724 (1991) ("whether or not in a particular situation a decision to erect a fence is discretionary, the maintenance of or failure to maintain a fence after its erection does not entail a discretionary function").

[8]Because the town is immune from suit under § 10(*j*), we need not address the parties' arguments under § 10(*b*), which immunizes the government from suit over its discretionary functions. We note that while the decision to build a fence or barrier is ordinarily a discretionary function immunized under § 10(*b*), see *Barnett* v. *Lynn*, 433 Mass. 662, 664 (2001); *Alter* v. *Newton*, 35 Mass. App. Ct. 142, 146-147 (1993), the same immunity does not necessarily apply to other cautionary steps, such as posting a warning sign. See *Alter, supra* at 147.

[9]Having decided that the town is immune, the recreational use question is moot. We exercise our discretion to decide the question, however, because the "issue[] [is] significant and ha[s] been fully briefed and it is in the public interest to do so." *Doe* v. *Police Commr. of Boston*, 460 Mass. 342, 343 n.3 (2011). See *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Ct. Dept.*, 403 Mass. 628, 629 n.4 (1988), cert. denied, 490 U.S. 1066 (1989); *Commonwealth* v. *Cory*, 454 Mass. 559 560 n.3 (2009). See also note 2, *supra*.

*Sandler* v. *Commonwealth*, 419 Mass. 334 (1995), defines what constitutes reckless conduct under the recreational use statute.

> "Reckless failure to act involves an intentional or unreasonable disregard of a risk that presents a high degree of probability that substantial harm will result to another. The risk of death or grave bodily injury must be known or reasonably apparent, and the harm must be a probable consequence of the defendant's election to run that risk or of his failure reasonably to recognize it."

*Id.* at 336 (citation omitted). In *Sandler*, the plaintiff suffered serious injuries from a bicycle crash that was caused by hitting an uncovered drain in an unlit tunnel. The Commonwealth's employees responsible for maintaining the tunnel knew (and had known for a while) that the drain cover was missing and that the lights were out. *Id.* at 337-338. After citing a litany of cases where recklessness was found, *id.* at 339 n.4, the Supreme Judicial Court concluded that the Commonwealth's failure to remedy the defects of this tunnel was not wilful, wanton, or reckless behavior. *Id.* at 338-340. Therefore, even though the employees "did not respond reasonably," "the degree of the risk of injury . . . [did] not meet the standard that we have established for recklessness." *Id.* at 338.

Carol argues that the town met the recklessness standard because it knew of the danger of baseballs entering the playground area, as evidenced by installing a net between the field and the playground.[10] While that may be true, the failure to extend the netting, erect a barrier, or post warning signs by the stage area does not rise to reckless conduct. The risk that a child in the stage area would be hit by a ball does not "present[] a high degree of probability that substantial harm will result to another." *Id.* at 336. Nor is "[t]he risk of death or grave bodily injury . . . known or reasonably apparent." *Ibid.* The facts here simply do not approach the level of behavior that is required to

---

[10]Carol also argues that the determination of recklessness should be left to the jury. We note that *Sandler* came to the Supreme Judicial Court on appeal from the denial of the Commonwealth's motion for directed verdict. *Sandler, supra* at 334-335. Even after the jury found liability, the court still held that the Commonwealth's behavior could not be reckless as a matter of law.

allow this case to go before a jury. We therefore conclude that, as a matter of law, the town was not wilful, wanton, or reckless for failing to prevent the injuries to Shannon.

*Conclusion.* The order denying the town's motion for summary judgment is reversed. A new order is to enter allowing the town's motion for summary judgment.

*So ordered.*