NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-263                                          Appeals Court

EDWARD J. GILL, personal representative,[1]  vs.  PETER ARMSTRONG[2]
                        & another.[3]


                        No. 22-P-263.

      Plymouth.     December 14, 2022. – June 22, 2023.

          Present:  Neyman, Shin, & Smyth, JJ.



Wrongful Death.  Conscious Pain and Suffering.  Negligence,
     Gross negligence, Governmental immunity.  Governmental
     Immunity.  Immunity from Suit.  Massachusetts Tort Claims
     Act.  Real Property, Easement.  Easement.  Motor Vehicle,
     All-terrain vehicle.  Practice, Civil, Wrongful death,
     Motion to dismiss.




     Civil action commenced in the Superior Court Department on
September 29, 2020.

     A motion to dismiss was heard by Brian S. Glenny, J., and
separate and final judgment was entered by him.


     Matthew W. Perkins for the plaintiff.
     Justin L. Amos for town of Marshfield.

---

     [1] Of the estate of Anthony J. Gill.

     [2] Individually and doing business as PA Construction.

     [3] Town of Marshfield.

NEYMAN, J.  On April 29, 2020, Anthony J. Gill (decedent) was operating his all-terrain vehicle (ATV) on an easement benefiting codefendant Peter Armstrong and on property owned by codefendant town of Marshfield (town), when he struck a wire cable hanging between two trees and suffered severe head and neck injuries that resulted in his tragic death.  The decedent's father, Edward J. Gill, as personal representative of the estate of the decedent (plaintiff), sued the town and Armstrong for wrongful death, conscious pain and suffering, and gross negligence.  A Superior Court judge concluded that the Massachusetts Tort Claims Act, G. L. c. 258, § 10 (j), barred the plaintiff from bringing claims against the town in relation to this incident, and thus allowed the town's motion to dismiss the plaintiff's claims against it.[4]  A separate and final judgment entered in favor of the town.  We affirm.

Background.  According to the second amended complaint, Armstrong owned undeveloped property in the town designated as "Ferry Street Rear," which was also "informally known as 'Peter's Pit.'"  Armstrong's property had "the benefit of a [forty] foot easement over a [r]ight of [w]ay . . . that [was]

---

[4] The judge also concluded that the town was entitled to dismissal under the recreational use statute, G. L. c. 21, § 17C.  In light of our resolution under G. L. c. 258, § 10 (j), we need not decide whether the recreational use statute also bars the plaintiff's claims.

3

located on the abutting property owned by the [t]own."  The right of way provided access and egress from Ferry Street, through the town's property, to the Ferry Street Rear property owned by Armstrong.  Armstrong knew that ATV riders accessed Ferry Street Rear and the right of way, and permitted riders to use the right of way to access Ferry Street Rear.  Approximately ten years prior to April 29, 2020, Armstrong "expressly provided authorization to Anthony J. Gill and fellow riders to use the Ferry Street Rear/Peter's Pit property for ATV riding."

Armstrong "had directed an employee, agent, representative or contractor to purchase, erect, place and maintain [a] wire cable across the [r]ight of [w]ay."  "In the past . . . Armstrong's representatives, employees or agents had placed a cable across the [r]ight of [w]ay, blocking ingress into the Ferry Street Rear lot owned by . . . Armstrong."  The town and various town departments "had required . . . Armstrong to remove the cable across the [r]ight of [w]ay in order to provide emergency access" to town property and Armstrong's property.  However, the town also "permitted and allowed the wire cable to be maintained on its property."[5]

---

[5] Although we accept all of the allegations in the complaint as true, see Harrington v. Costello, 467 Mass. 720, 724 (2014), we note that it contains a variety of contradictory averments, including the obvious inconsistency between the allegation that the town required Armstrong to remove the cable, and the

On April 29, 2020, the decedent, while riding his ATV, accessed Ferry Street Rear via Armstrong's right of way, struck the cable that had been placed across the right of way, suffered severe head and neck injuries, and "was transported to South Shore Hospital where he was pronounced dead." The plaintiff alleged that Armstrong's "placement and maintenance of the wire cable across the [r]ight of [w]ay used by ATV riders constitute[d] a failure to maintain the property in a reasonably safe condition and warn against known dangers" and caused the decedent's death. The plaintiff further alleged that the town failed to maintain the right of way in a reasonably safe condition, failed to "warn visitors of any unreasonable dangers known or reasonably knowable," and "permitt[ed] a wire cable across the right of way to be installed and maintained."

Contending that it was immune from suit under both G. L. c. 258, § 10 (j), and the recreational use statute, G. L. c. 21, § 17C, the town moved to dismiss the complaint. See Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). In a thorough memorandum of decision and order, the judge determined that the town was entitled to dismissal under both statutes and dismissed the complaint. See note 4, supra. A separate and final judgment entered, and the plaintiff appeals therefrom.

---

allegation that the town permitted and allowed the cable to be maintained on its property.

Discussion. We review the allowance of a motion to dismiss de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. See Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). "[W]e look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief." Id., citing Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636 (2008).

The town contends that it is immune from suit under G. L. c. 258, § 10 (j), because there is no dispute that the condition at issue -- the placing of the wire cable between two trees on the right of way -- was originally caused by Armstrong. The town also contends that it cannot be held liable for its alleged failure to act or prevent harm to the decedent. We agree.

General Laws c. 258, § 10 (j), preserves governmental immunity for a public employer's "act or failure to act to prevent or diminish the harmful consequences of a condition or situation," including the wrongful conduct of a third party, unless the condition or situation was "originally caused" by the public employer.[6] G. L. c. 258, § 10 (j). See Brum v.

---

[6] General Laws c. 258, § 10 (j), provides that the limited waiver of sovereign immunity under the Massachusetts Tort Claims Act shall not apply to the following:

"any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or

Dartmouth, 428 Mass. 684, 692 (1999). "By its plain language, § 10 (j) generally immunizes public employers from any claim 'based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation.'" Klevan v. Newton, 97 Mass. App. Ct. 87, 90 (2020), quoting G. L. c. 258, § 10 (j). Absent from the complaint in the present case is any allegation that the town placed the cable across the right of way. In fact, the complaint alleges that it was the codefendant, Armstrong, who "had directed an employee, agent, representative or contractor to purchase, erect, place and maintain the wire cable across the [r]ight of [w]ay." The complaint further alleges that, "[i]n the past . . . Armstrong's representatives, employees or agents had placed a cable across the [r]ight of [w]ay, blocking ingress into the Ferry Street Rear lot owned by . . . Armstrong." With respect to the town, by contrast, the complaint alleges that it failed to "warn visitors" of the cable or "permitt[ed]" the wire cable to be installed and maintained across the right of way. Where the unequivocal language of the complaint states that Armstrong -- and not the town -- originally caused the harmful situation or condition, and where the plaintiff's claim amounts to an

situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."

allegation that the town failed to prevent harm to the decedent, § 10 (j) immunity applies.  See Cormier v. Lynn, 479 Mass. 35, 41 (2018).

The plaintiff responds that the town should not be immunized because, under G. L. c. 258, § 10 (j) (3), immunity does not apply to "any claim based on negligent maintenance of public property."  Thus, the plaintiff argues, the town may be found liable for failing to maintain the right of way in a reasonably safe condition and failing to warn visitors of any unreasonable dangers.  Massachusetts courts have previously rejected this very argument because "maintenance" in this context means "to keep in an existing state (as of repair, efficiency, or validity):  preserve from failure or decline." Moore v. Billerica, 83 Mass. App. Ct. 729, 733 (2013), quoting Merriam Webster's Collegiate Dictionary 749 (11th ed. 2005). "The plain definition [of 'maintain'] assumes that what is to be maintained has already been constructed."  Moore, supra.

As evidence that the town "maintained" the wire cable across the right of way, the plaintiff points to an affidavit by Armstrong in which he averred, inter alia, that when he "purchased the Ferry Street property, there was already a cable attached to the two trees within the right of way."[7]  The

_____

[7] At the outset of the present litigation, the plaintiff filed a motion for a real estate attachment.  Armstrong filed an

plaintiff asserts that Armstrong's affidavit "raises questions of fact as to how long the cable was maintained on the property, [and] the [t]own's knowledge of the cable." This claim is unavailing for several reasons. First, we typically assess a motion to dismiss against the well-pleaded allegations delineated in the four corners of the complaint and reasonable inferences drawn therefrom. See Navarro v. Burgess, 99 Mass. App. Ct. 466, 467 n.4 (2021). The Armstrong affidavit and the content therein were not referenced in or appended to the complaint. Indeed, the complaint's allegation that Armstrong installed the wire cable contradicts the averment in the Armstrong affidavit. Second, although a judge must treat the motion "as one for summary judgment" if "matters outside the pleading are presented to and not excluded by the court," see Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974), both parties acknowledged at oral argument that the judge did not convert the motion to dismiss to a motion for summary judgment. Finally, even assuming, arguendo, that the judge did consider the

---

opposition with his affidavit appended thereto. The plaintiff attached the Armstrong affidavit as an exhibit to his opposition to the town's motion to dismiss. The town moved to strike the affidavit. The judge, after allowing the motion to dismiss, endorsed the motion to strike, "NO ACTION TAKEN, given the [c]ourt's decision" allowing the town's motion to dismiss and entering separate and final judgment under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), which "renders this request moot."

Armstrong affidavit in deciding the motion to dismiss, there is no allegation in the affidavit that the town installed the cable. Thus, the plaintiff's reliance on the affidavit is unavailing.

In short, the plaintiff's claim rests at bottom on the allegation that the town allowed the wire cable to be maintained on its property.[8] Where the complaint does not allege that the town created the condition at issue, and where the complaint alleges only that the town failed to warn visitors and failed to prevent all risks by "permitting" the cable to be maintained on its property, the claims do not fall within the § 10 (j) (3) exception. Compare Moore, 83 Mass. App. Ct. at 733 (rejecting plaintiff's claim that § 10 (j) (3) precluded application of immunity because "maintenance of a playground envisions the general upkeep of the playground's equipment and grounds, not preventing all risks of danger to its visitors"), with Greenwood v. Easton, 444 Mass. 467, 475 (2005) (town's placement of telephone poles in parking lot without properly securing them in safe manner created unreasonable risk of harmful consequences to foreseeable persons like plaintiff). "Stretching the definition

---

[8] Of note, the only nonconclusory allegation in the complaint regarding the town's knowledge of the cable wire states that the town and various town departments "had required . . . Armstrong to remove the cable across the [r]ight of [w]ay in order to provide emergency access" to town property and Armstrong's property.

of 'maintenance of public property' to require the town to . . . erect a barrier, or post warning signs would effectively swallow the immunities provided by § 10 (j), rendering them entirely barren and ineffective." Moore, supra at 733-734. As the Supreme Judicial Court stated in Brum, 428 Mass. at 696, the "principal purpose of § 10 (j) is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party . . . [a]nd to interpret . . . the subordinate clause referring to 'originally caused' conditions, to include conditions that are, in effect, failures to prevent harm, would undermine that principal purpose." See Cormier, 479 Mass. at 41 (claims originating from failure to act rather than affirmative act barred by § 10 [j]); Jane J. v. Commonwealth, 91 Mass. App. Ct. 325, 328 (2017) ("The requirement of an 'affirmative act' is strict; it is also quite distinct from a failure to prevent the harm"); Jacome v. Commonwealth, 56 Mass. App. Ct. 486, 489-490 (2002) (distinguishing affirmative act requirement from "failure to act" and from "examples of ways in which . . . public employees might have prevented the harm"). Accordingly, § 10 (j) immunity applies, and the judge did not err in allowing the town's motion to dismiss.

                              Separate and final judgment
                                      affirmed.