NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1186

EDGARDO STERNBERG & another[1]

vs.

CITY OF NEWTON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Edgardo Sternberg and Ayelet Sternberg (Sternbergs) brought this civil action pursuant to the Massachusetts Tort Claims Act, G. L. c. 258, against the city of Newton (city) for negligent maintenance of the city's sewer line (count 1) and negligent trespass of the city's sewer material (count 2). The city moved for summary judgment on both counts based on its claim that it is immune from suit pursuant to G. L. c. 258, §§ 10 (b) and 10 (j). A Superior Court judge denied the city's motion, and the city appealed as of right pursuant to the doctrine of present execution. See Brum v. Dartmouth, 428 Mass. 684, 688 (1999). We hold that the judge erred, and accordingly, reverse.

---

[1] Ayelet Sternberg.

1.  Background.  In the light most favorable to the Sternbergs, the gravamen of their suit is that on April 8, 2018, they suffered damage to their home due to a blockage in the city's sewer line that caused sewage material to flow onto their property.  This, the Sternbergs allege, was due to the city's failure to perform timely maintenance of the sewer line.  It is undisputed that the sewage backup was caused by heavy rags and debris clogging the sewer line.[2]  It is also undisputed that the city did not place these materials into the sewer, it had no knowledge of who did, and it had no knowledge of when the materials entered the sewer.  The Sternbergs also allege that the city had not "maintained, monitored or served" the sewer line for five years.[3]

The city maintains its sewer lines pursuant to a "Sewer Capital Improvement Program" (CIP).  The CIP has a schedule it follows for investigations and repairs based on certain criteria, including flow monitoring results, underdrain

---

[2] The Sternbergs' home insurance company hired an engineering company to determine the cause of the sewage material backup.  The engineering company determined that the sole cause of the damage was a blockage in the city's sewer system, and not due to a defect in the property's sewage line.  As a result, the Sternbergs' claim for insurance coverage was denied.

[3] They further allege that the manholes in front of their house are at the lowest point in the surrounding terrain, and accordingly, they should require "constant vigilance."

2

locations, pipe material and age, and operation and maintenance problem sites. Pursuant to the CIP schedule, the area where the Sternbergs live was inspected on April 26, 2018, which was after the backup occurred.

2. Discussion. a. The discretionary function exception. As an exception to the limited waiver of sovereign immunity, pursuant to G. L. c. 258, § 10 (b), a public employer shall not be liable for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." The city claims the judge erred in her application of this section. We agree.

To determine whether the discretionary function exception of § 10 (b) applies to injury-causing conduct requires a two-step analysis. Harry Stoller & Co. v. Lowell, 412 Mass. 139, 141 (1992). The first step is to determine whether the city, as the public employer, "had any discretion at all as to what course of conduct to follow." Id. If the city had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, then the discretionary function exception does not apply. Id.

3

The second step is to determine whether the discretion that the city had is the type of discretion for which § 10 (b) provides immunity from suit. Harry Stoller & Co., 412 Mass. at 141. That is, § 10 (b) provides "immunity only for discretionary conduct that involves policy making or planning." Fortenbacher v. Commonwealth, 72 Mass. App. Ct. 82, 87 (2008), quoting Harry Stoller & Co., supra. In other words, we must determine whether the conduct that caused the injury has a "high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning," as opposed to conduct that consists of "the carrying out of previously established policies or plans." Harry Stoller & Co., supra at 142, quoting Whitney v. Worcester, 373 Mass. 208, 218 (1977).[4]

Here, the Sternbergs allege that the city should have serviced the sewer line in question more frequently or more recently. There is no allegation that any service course of

_____

[4] The Sternbergs erroneously claim that the application of §§ 10 (b) and 10 (j) present genuine issues of material fact for a jury to resolve. Rather, the application of the immunity provisions found in § 10 present questions of law for the judge to decide at the motion stage, as those sections provide immunity for suit that would be "lost forever" if the litigation proceeds past the motion stage. See Brum, 428 Mass. at 688. See also Klevan v. Newton, 97 Mass. App. Ct. 87, 90 n.8 (2020) (application of § 10 [j] is a question of law); Alter v. Newton, 35 Mass. App. Ct. 142, 148 (1993) (application of § 10 [b] is a question of law).

4

action was prescribed by a statute, regulation, or established agency practice. Rather, the allegation is that the city failed to plan, not that it failed to implement a plan established by a rule or practice. Contrast Shapiro v. Worcester, 464 Mass. 261, 270-271 (2013) (city established plan for sewer improvement but totally failed to implement it). In other words, when or how the city chose to service the sewer line was a matter of discretion. See Harry Stoller & Co., 412 Mass. at 141.

Next, we determine that the city's discretionary sewer service plan involved policy making or planning. See Harry Stoller & Co., 412 Mass. at 141. The CIP schedule for investigations and repairs is based on certain criteria, including flow monitoring results, underdrain locations, pipe material and age, and operation and maintenance problem sites. This makes it a quintessential example of "high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning" (citation omitted). Id. at 142. The Sternberg's contrary claim "invites the judicial 'second-guessing' of administrative decisions grounded in social, economic, and political policy that the discretionary function exception was designed to

5

prevent" (citation omitted).  Fortenbacher, 72 Mass. App. Ct. at 89.  See Patrazza v. Commonwealth, 398 Mass. 464, 466 (1986).[5]

The Sternbergs further claim (and the city disputes) that they reported to the city that there was another sewage backup in March of 2010, which damaged their property, but their appeal to the city for remedial action at that time brought no response.  For purposes of summary judgment, we treat the allegation as true, but it is of no effect.  That the city had prior notice of a danger is irrelevant to the discretionary function inquiry of § 10 (b) because the exemption extends even to circumstances where the public employer "abused" its discretion.  Barnett v. Lynn, 433 Mass. 662, 665-666 (2001).  The Sternbergs' claims are foreclosed by G. L. c. 258, § 10 (b).

---

[5] Doherty v. Belmont, 396 Mass. 271 (1985), on which the judge and the Sternbergs relied, does not change our conclusion. In Doherty, the city exercised its discretion to remove parking meters from a public parking lot.  Id. at 276.  Thereafter, the plaintiff was injured when she fell on a parking meter stump that had not been pounded into the ground, as the city's plan required.  Id. at 272-273.  As the Supreme Judicial Court held, once the discretionary decision to remove the parking meters was made, the pounding down of the stumps was ministerial and did not rise to the level of a policy making decision.  Id. at 276. Here, in contrast, the Sternbergs claim that the city should have serviced the sewer line in question more frequently or more recently.  The adoption of the CIP as a maintenance plan and schedule was, as described above, a policy decision and not merely a ministerial type of duty related to the execution of the plan that the city had to do without using its own judgment or discretion.

b.  The public duty rule.[6]  As another exception to the limited waiver of sovereign immunity, pursuant to G. L. c. 258, § 10 (j), a public employer shall not be liable for:

> "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."

G. L. c. 258, § 10 (j).  This is our Legislature's codification of the common-law public duty rule.  See Brum, 428 Mass. at 693-694.  "[T]he principal purpose of § 10 (j) is to preclude liability for [governmental] failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party," as long as the government was not the "original cause" of the harmful condition or situation.  Id. at 696.

Here, the Sternbergs claim that the city's failure to more frequently or more recently conduct maintenance of the sewer line was negligent and constituted a negligent trespass.  As noted above, it is undisputed that the original cause of the sewer backup was heavy rags and debris clogging the sewer line.

---

[6] The "public duty rule" originated at English common law and was particularly applied to the office of sheriff.  In South v. Maryland, 59 U.S. 396, 402-403 (1855), the United States Supreme Court explained the rule as follows:  "[i]t is an undisputed principle of the common law, that for a breach of a public duty, an officer . . . . is amenable to the public, and punishable by indictment only."

7

It is also undisputed that the city did not place these materials into the sewer, it had no knowledge of who did, and it had no knowledge of when the materials entered the sewer.[7]  In other words, the Sternbergs' maintenance schedule claim is based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, which were not originally caused by the city.  In these circumstances, the city is immune from suit pursuant to G. L. c. 258, § 10 (j).  See Klevan v. Newton, 97 Mass. App. Ct. 87, 92-93 (2020) (section 10 [j] barred claim that city failed to act to diminish the possibility that sewage might back up into plaintiff's home, where original cause of backup was unexplained flood).

The Sternbergs claimed, and the motion judge agreed,[8] that the enumerated exception to immunity, found in § 10 (j) (3), applied to the circumstances of this case.  Section § 10 (j) (3) states that § 10 (j) immunity does not apply to "any claim based on negligent maintenance of public property."  It is true that

_____

[7] Based on our review of the "Joint Statement of Material Facts" submitted below, these facts are undisputed.

[8] The motion judge determined that "[w]ere the Sternbergs' claims based solely on the [c]ity's failure to prevent the sewage backup by failing to undertake some affirmative course of action, they would be barred [by § 10 (j)], as the 'original cause' of the backup was the buildup of heavy rags and debris in the sewer, which the [c]ity was not responsible for."  However, because of the § 10 (j) (3) exception, the judge concluded that the city was not entitled to immunity.

the Sternbergs have pleaded "negligent maintenance."  However, as the parties opposing summary judgment, they cannot simply rest on their "pleadings and mere assertions of disputed facts to defeat the motion for summary judgment."  LaLonde v. Eissner, 405 Mass. 207, 209 (1989).  Instead, we must evaluate the factual nature of the claims they have made.

As "maintenance" is not defined in the statute, we have applied the general accepted plain meaning of the word.  Relying on the dictionary definition, we have noted that "maintain" is "to keep in an existing state (as of repair, efficiency, or validity):  preserve from failure or decline."  Moore v. Billerica, 83 Mass. App. Ct. 729, 733 (2013), quoting Merriam Webster's Collegiate Dictionary 749 (11th ed. 2005).  See Gill v. Armstrong, 102 Mass. App. Ct. 733, 736-737 (2023).

The Sternbergs have not alleged that there was a defect in the sewer line or its operation.  In fact, there is no evidence in the summary judgment record that the sewer line needed repair, was in decline, or was defective.[9]  Contrast Nemet v. Boston Water & Sewer Comm'n, 56 Mass. App. Ct. 104, 108-109 (2002) (failure to repair damaged water main pipe resulting in

---

[9] Rather, the engineering company hired by the Sternberg's insurance company determined that the sole cause of the damage was a blockage in the city's sewer system, and not due to a defect in the property's sewage line.

flooding of property). Rather, the original cause of the harm to the Sternbergs was the sewer line being clogged with rags and debris, a circumstance of which the city was not aware. Maintenance of a sewer system involves keeping in good repair the lines, or making actual repairs to known damaged areas of the lines, of the system itself. It does not require preventing someone from unlawfully damaging the system. The Sternbergs' claims do not fall within the § 10 (j) (3) exception.[10] See Moore, 83 Mass. App. Ct. at 733 (rejecting plaintiff's claim that § 10 [j] [3] precluded application of immunity because "maintenance of a playground envisions the general upkeep of the

---

[10] Any reliance the Sternbergs or the motion judge put on Lobster Pot of Lowell, Inc. v. Lowell, 333 Mass. 31 (1955), is misplaced for two reasons. First, the case predates the Legislature's 1994 amendment of our Tort Claims Act, which retained the common-law notion of a public employer's immunity from suit in a limited number of exceptions, including that found in § 10 (j). See St.1993, c. 495, § 57. Second, in Lobster Pot of Lowell, Inc., the Supreme Judicial Court noted that a municipality "is responsible for damages which accrue to individuals through negligence in the construction, maintenance or operation of its system of sewers." Id. at 33, quoting Pevear v. Lynn, 249 Mass. 486, 488 (1924). However, that duty did not aid the claim that the city permitted the sewer to become "clogged up." The court affirmed the directed verdict for the city because whether the clogged sewer line "was something which should have been anticipated or which periodic inspection would have disclosed is left to conjecture." Lobster Pot of Lowell, Inc., supra. That same conjecture is the basis of the Sternberg's claim.

10

playground's equipment and grounds, not preventing all risks of danger to its visitors").[11]

The order denying the city's motion for summary judgment is reversed, and the matter is remanded for the entry of summary judgment in favor of the city.

<u>So ordered</u>.

By the Court (Meade, Blake & Brennan, JJ.[12]),

Clerk

Entered:  August 1, 2024.

---

[11] In any event, because we have determined that the city is immune from suit pursuant to § 10 (<u>b</u>), any exception to immunity based on the public duty rule pursuant to § 10 (<u>j</u>) is therefore inapplicable in this case.  See <u>Fortenbacher</u>, 72 Mass. App. Ct. at 90.

[12] The panelists are listed in order of seniority.

11