NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-611

WILLIAM G. LUFKIN, JR.,[1] & another[2]

vs.

COMMONWEALTH & another.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following the death of their son, William G. Lufkin, III, (decedent) in the Plymouth County Correctional Facility (facility), the plaintiffs, William G. Lufkin, Jr., and Barbara A. Lufkin, filed a complaint against the Commonwealth in the Superior Court, alleging wrongful death, conscious pain and suffering, and negligent infliction of emotional distress. See G. L. c. 229, §§ 2, 6. After a hearing on the Commonwealth's

---

[1] Individually and as personal representative of the estate of William G. Lufkin, III.

[2] Barbara A. Lufkin.

[3] Sheriff of the County of Plymouth. We refer to the defendants collectively as the Commonwealth.

motion for summary judgment, the trial judge allowed the motion and entered a judgment dismissing all claims, which the plaintiffs now appeal. Because the Massachusetts Tort Claims Act (MTCA), G. L. c. 258, § 10 (j), immunizes the Commonwealth from the plaintiffs' claims, we affirm.

Background. We recite the following undisputed facts. After the decedent's initial appearance in the United States District Court for the District of Massachusetts on February 17, 2017, a magistrate judge ordered the decedent to be held pending a detention hearing. He was assigned to the facility and once there, went through a booking process that included a medical screening.

Neither the booking officer nor the nurse who conducted the medical screening noted that the decedent was at a risk of self harm, based on his behaviors and his responses to questions. The decedent answered in the negative each time he was asked if he intended to hurt himself. The decedent reported alcohol and drug use but showed no signs of withdrawal; the nurse nonetheless ordered a "detox monitor," which would have involved checks twice per day for signs of detoxification, but she did not enter the order in the decedent's record.[4] The decedent was not placed on suicide watch or mental health watch.

---

[4] This error was discovered after the decedent's death, and the order was subsequently added to his record.

2

Because the decedent "had issues with . . . gangs" in the area and thus had to be kept separate from local gang members, he was placed in administrative segregation, where he was housed alone.  The order to place the decedent in administrative segregation indicated no medical issues that would preclude such placement.  Once the decedent was in administrative segregation, none of the officers conducting his orientation or performing rounds of the unit noticed anything concerning about his behavior.

At approximately 2:27 P.M. on February 18, 2017, an officer making rounds found the decedent unconscious.  The decedent had fashioned a ligature out of the laundry bag and canteen bag given to him (and to every inmate) upon entering the facility and had placed it around his neck.  Attempts to resuscitate the defendant were unsuccessful.  The medical examiner ultimately determined that the defendant's death was a suicide.

The plaintiffs did not see the decedent's body at any point between 2:27 P.M., when the officers discovered the unconscious decedent, and 6:21 P.M., when the body was secured at the morgue.  The plaintiffs were notified of their son's suicide around 6 P.M.

3

The plaintiffs filed their complaint in the Superior Court on February 18, 2020.  On August 21, 2023, the Commonwealth moved for summary judgment, and after a hearing on the motion, the trial judge allowed the motion.

Discussion.  "Our review of a decision on a motion for summary judgment is de novo.  Summary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law." (Quotations and citations omitted.)  Theisz v. Massachusetts Bay Transp. Auth., 495 Mass. 507, 511 (2025).[5]

The MTCA immunizes public employers from liability for

> "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."

G. L. c. 258, § 10 (j).[6]  "Our case law is clear that an 'original cause' must be an affirmative act; the failure to act does not suffice."  Paradis v. Frost, 103 Mass. App. Ct. 410,

---

[5] Although we are not persuaded that the "judge failed to apply the proper standard" or "erred by determining the credibility of witnesses," we need not address those aspects of the plaintiffs' argument because our review is de novo and relies only on undisputed facts.

[6] There are four statutory exceptions to § 10 (j), none of which apply here.  See G. L. c. 258, § 10 (j) (1)-(4).  The plaintiffs do not argue that any exception applies.

4

413 (2023).  See Kent v. Commonwealth, 437 Mass. 312, 318-319 (2002).

In this case, the original cause of the decedent's death was his suicidal frame of mind.  See Paradis, 103 Mass. App. Ct. at 414.  See also McCarthy v. City of Waltham, 76 Mass. App. Ct. 554, 561 (2010) ("there can be no serious question that the original cause of harm in [decedent's] taking of his own life was his suicidal frame of mind").  Additionally, the lack of a third-party tortfeasor in this case does not foreclose application of § 10 (j).  Theisz, 495 Mass. at 514 n.12 ("immunity under § 10 [j] is not limited to the harmful consequences caused by third persons").

The plaintiffs argue that the Commonwealth acted affirmatively by "placing [the decedent] in administrative segregation" and "providing him with a mesh laundry bag with a cord closure."[7]  However, those acts are not the "original cause" of the decedent's death.  See Paradis, 103 Mass. App. Ct. at 414 (concluding failure to prevent decedent's suicide was not original cause of death).  Putting the decedent in administrative segregation to protect him from enemies and

---

[7] The plaintiffs also argue that because the decedent "was not put on a detox monitor," the Commonwealth originally caused the decedent's suicide.  Failure to place the decedent on a detox monitor was not an affirmative act.

5

furnishing him with basic items given to all inmates -- both actions in the normal course for the facility -- does not amount to causing the defendant to commit suicide.  Cf. Baptista v. Bristol County Sheriff's Dep't, 100 Mass. App. Ct. 841, 857 (2022) (finding placement of decedent in cell with arrestees was original cause of death where such placement was illegal).  Rather, where the decedent showed no signs of any intention to harm himself, the facility's failure to deviate from normal practices was merely a "failure to prevent" the death, and § 10 (j) thus immunizes the Commonwealth from liability.  See Brum v. Dartmouth, 428 Mass. 684, 696 (1999).

Because all the claims in this case[8] stem from the facility's failure to prevent the decedent's death, we conclude that § 10 (j) excludes liability for each of the plaintiffs' claims and that we need not reach the potential application of § 10 (b) to this case.  See Brum, 428 Mass. at 691.

---

[8] Including the claim for negligent infliction of emotional distress.  See, e.g., Jacome v. Commonwealth, 56 Mass. App. Ct. 486, 492 (2002) (applying § 10 [j] to negligent infliction of emotional distress claim stemming from death of plaintiff's son).  However, regardless of § 10 (j), the motion judge correctly concluded that "[b]ecause proximity in time between the victim's injury and the viewing of the victim's body by the bystanders is a necessary element . . . and no facts in the summary judgment record demonstrate when [plaintiffs] saw [decedent's] body," summary judgment on the claims for negligent infliction of emotional distress was appropriate.  See, e.g., Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 342-343 (1983).

                                    <u>Judgment affirmed</u>.

                                    By the Court (Hand, Hodgens &
                                      Tan, JJ.[9]),

                                    *Paul Little*

                                    Clerk

Entered:   December 8, 2025.

---

[9] The panelists are listed in order of seniority.